## MARTINDALE v. OREGON SHORT LINE R. CO.

No. 2892.   Decided July 10, 1916.   On application for rehearing October 16, 1916.   (160 Pac. 275.)

1. APPEAL AND ERROR—QUESTION OF FACT—VERDICT.  Where there is any substantial evidence in support of every element necessarily included in the general verdict, the Supreme Court is bound thereby.  (Page 470.)

2. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE. Deceased, a comparative stranger in the neighborhood, who had been invited by some young people to attend a dance, and who accepted the invitation and rode in a covered spring wagon with them, drawn by a gentle team driven by a competent driver, and who while returning, and without the slightest opportunity to warn the others or to protect herself, was struck and killed at a crossing, was not guilty of contributory negligence.  (Page 471.)

3. NEGLIGENCE—IMPUTED NEGLIGENCE—DRIVER OF VEHICLE.  In such case, and even if the driver was guilty of negligence, his negligence could not be imputed to the deceased; the mere fact that she had accepted the invitation of the young people with whom she was riding to attend a dance being insufficient to charge her with being interested in a common or joint enterprise.[1]  (Page 472.)

4. NEGLIGENCE—PLEADING—INSTRUCTONS.  A charge that plaintiff must by a preponderance of the evidence establish one or more of the particular acts of negligence set forth in a complaint, where more than one is pleaded, and that such act must be the proximate cause of the injury complained of, is proper; as it does no more than to limit the jury to the particular acts of negligence specified in the complaint.  (Page 474.)

5. NEGLIGENCE—PLEADING—RECOVERY.  A plaintiff must recover if he recovers at all upon the acts of negligence pleaded.  (Page 474.)

6. RAILROADS—ACCIDENT AT CROSSING—SUFFICIENCY OF EVIDENCE—FAILURE TO KEEP LOOKOUT.  In an action for the death of plaintiff's minor daughter killed when the wagon in which she was riding was struck by defendant's passenger train at a crossing, brought on the ground that the defendant negligently failed to

[1] *Atwood* v. *Utah Light & R. Co.*, 44 Utah 366, 140 Pac. 137; *Lockhead* v. *Jensen*, 42 Utah 99, 129 Pac. 347.

keep a diligent lookout for persons on the crossing, evidence *held* to sustain a verdict for plaintiff. (Page 474.)

### On Application for Rehearing.

7. APPEAL AND ERROR—QUESTION OF FACT—WEIGHT OF EVIDENCE. After judgment the statements of the witnesses against whom the jury has made findings must be taken most strongly against them. (Page 480.)

Appeal from District Court, Third District; Hon. *Geo. G. Armstrong,* Judge.

Action by James Martindale against the Oregon Short Line Railroad Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Geo. H. Smith, J. V. Lyle* and *B. S. Crow* for appellant.

*B. N. C. Stott* for respondent.

## APPELLANT'S POINTS.

The rule of decision in the State of Idaho was pleaded and put in evidence. This rule is:

"That when a person approaches a railroad crossing, whether a street crossing in a city or a crossing over the public highway in a country district, such person is required to stop, look and listen for an approaching train, and that the failure to do so is negligence *per se.*" (*Wheeler* v. *Oregon R. & N. Co.,* 102 Pac. pages 354, 358; *Burrow* v. *Idaho & W. N. R. R. Co.,* 135 Pac. 838; *Fleenor* v. *O. S. L. R. R. Co.,* 102 Pac. 897.

It is undoubtedly the law of this State "that where a person in approaching a railroad crossing has failed to look when he could have seen, or has failed to listen when he could have heard, or, in case he could neither see nor hear, has failed to exercise ordinary care to guard against accident before entering upon the track, is guilty of contributory negligence as a matter of law." (*Wilkinson* v. *O. S. L. R. R. Co.,* 35 Utah 110 (and cases there cited); *Bates* v. *S. P., L. A. & S. L. R. R. Co.,* 38 Utah 568.)

In *Davis* v. *R. R.*, 159 Fed. 10, where the plaintiff riding on the front seat as the guest of the driver and was injured at a railroad crossing, it was said:

"It is now the better recognized rule of law that as to such a person situated as was the plaintiff, riding in a vehicle in mere companionship with his friend, engaged upon a mutual adventure, it is as much his duty as that of the driver to take observation of dangers and to avoid them, if practicable, by suggestion and protest."

See *Brommer* v. *R. R.*, (C. C. A.) 179 Fed. 577.

See also in support of this contention, the following cases: *Hermann* v. *Ry. Co.*, (R. I.) 90 Atl. 813; *Wilson* v. *N. Y., N. H. & H. R. Co.*, (R. I.) 29 Atl. 300; *Crosby* v. *Main Cent. R. Co.*, 93 Atl. 744; *Smith* v. *Main Cent. R. Co.*, 32 Atl. 967; *Bush* v. *U. P. R. R. Co.*, (Kan.) 64 Pac. 624; *Colorado & S. Ry. Co.* v. *Thomas*, (Colo.) 81 Pac. 801; *Illinois Cent. R. Co.* v. *McLeod*, (Miss.) 29 S. 76; *McCaffrey* v. *D. & H. Co.*, 16 N. Y. Supp. 495; *Meehan* v. *Buckmaster*, 50 N. Y. Supp. 85; *Cunningham* v. *Erie R. Co.*, 121 N. Y. Supp. 706.

## RESPONDENT'S POINTS.

The Common Law of England is the common law as expressed by the Supreme Court of the United States during the time that Idaho was a territory, it having been admitted to the Union in the year 1890; thus the interpretation of the United States Supreme Court as to what the Common Law of England was, and is, would be the construction of the State of Idaho.

*Little* v. *Hackett*, 116 U. S. 366, 29 L. Ed. 652. The instruction of the lower court is set forth with approval on page 654 of the Ed. of the Lawyer's Reports Annotated, being 368 of the Official Reports, the same being as follows:

"The passenger in the carriage may direct the driver where to go, to such a park or to such a place that he wishes to see; so far the driver is under his direction; but my charge to you is that as to the manner of driving, the driver of the carriage or the owner of the hack (in other words, he who has charge of it and has charge of the team) is the person responsible for the manner of driving; and the passenger is not respon-

sible for that, unless he interferes and controls the matter by his own commands or requirements. If the passenger requires the driver to drive with great speed through a crowded street, and an injury should occur to foot passengers or to anybody else, why then he might be liable because it was by his own command and direction that it was done; but ordinarily in a public hack the passengers do not control the driver, and therefore I hold that unless you believe that Mr. Hackett exercised control over the driver in this case, he is not liable for what the driver did. If you believe he did exercise control, and required the driver to cross at this particular time, then he would be liable because of his interference.''

*Atwood* v. *Utah Light & Railway Co.*, 44 Utah 336; 140 Pac. 137; *Lockhead* v. *Jensen*, 42 Utah 99, 129 Pac. 347, are recent cases on the subject as construed by the Supreme Court of Utah in its construction of the common law on that doctrine.

Immaterial whether licensee or trespasser, defendant owed duty to all persons to have a headlight on its engine that the engineer may discover persons or obstruction on the track, not only for protection of passengers and employees, but of all persons who may be on the track. (*Griffin* v. *Atl. C. L. Ry.* [N. C.], 82 S. E. 973. [1914.]) There are a number of very recent cases adopting the same rule with reference to automobile collisions, a few of them are given as follows: Negligence of an operator of an automobile not imputable to his guest. (*Hubbard* v. *Bartholomew*, [Iowa, 1913], 144 N. W. 13.) Negligence of husband driving automobile not imputable to wife. (*Denton* v. *M. K. & T. Ry.*, 47 L. R. A. N. S. 820, 133 P. 558 [Kansas, 1913].) Negligence of chauffeur not attributable to driver when having no authority or control over the machine or the driver. (*Porter* v. *Jacksonville Electric Co.*, 64 Fla. 409 [1912].) Negligence of operator must be *sole* approximate cause of the injury to excuse the company. Driver's contributory negligence not imputed to driver. (*Lake Erie & W. R.* v. *Reed* [Nov., 1913], [Ind. Rep.], 103 N. E. 127.) Negligence of husband not imputed to wife when he is driving. (*City of Louisville* v. *Zoeller* [Ky., 1913], 155 Ky. 192.) Negligence of driver does not excuse county when negligent. Driver's negligence contributed to in-

jury.  (*Latimer* v. *Anderson County* [S. C., 1913], 78 S. E. 879.)

FRICK, J.

The plaintiff recovered judgment against the defendant for damages caused by the death of plaintiff's daughter, a minor of the age of nineteen years.  The death of such daughter, plaintiff alleged, was caused through the negligence of the defendant in running a passenger train over a public road crossing in the State of Idaho, thereby causing said train to collide with a wagon in which said minor, with others, was riding at the time.  After making the necessary allegations of inducement, plaintiff alleged the acts or causes of negligence on the part of the defendant as follows: (1) That the "defendant carelessly and negligently failed and omitted in approaching said crossing to have any headlight upon its engine;" (2) that the defendant "carelessly and negligently failed and omitted in approaching said crossing to blow the whistle * * * or ring the bell, or to in any wise give warning of the approach of said train;" (3) that the defendant "carelessly and negligently failed and omitted to keep a diligent lookout ahead for * * * persons traveling over the said road and across the railroad track;" (4) that the defendant "carelessly and negligently operated said train at a high and dangerous rate of speed;" and (5) that the defendant "carelessly and negligently failed and omitted to keep the said train under reasonable control in approaching the said crossing."

Briefly stated, the plaintiff's evidence shows:

A public highway running east and west crosses defendant's railroad track, which runs in a northeasterly and southwesterly direction.  The following plat shows the precise angle at which the public road, marked P. R. on the plat, crosses the defendant railroad, marked R. R. on the plat:

Appeal from Third District.

Miss Martindale, the deceased, on the night of September 12, 1913, in company with three other young women and four young men, attended a dance some miles westerly from the crossing in question. In going to the dance in the evening, about eight-thirty, all rode in a covered, three-seated spring wagon. In going they did not drive over the crossing in question, but passed along a road running east and west, but some distance north of the crossing. In returning home, however, for some reason the young man who drove the team took the road in question. In approaching the crossing three of the young people sat on the rear seat, three on the middle seat, and the deceased sat on one knee of one of the young women and on one knee of one of the young men, both of whom were riding on the middle seat, making four altogether on that seat, while the driver was in the front of the wagon. Whether he was sitting on the seat or down on the bottom of the wagon bed is not made very clear by the evidence. The deceased was so seated that she was facing north, or away from the railroad track and the direction from which the train was approaching the crossing. The team and wagon approached the crossing from the west. The directions in which both the train and wagon were moving are indicated by arrows on the plat. The deceased was visiting with friends or relatives who lived in the neighborhood, but their homes

were some miles away from the crossing in question. She had not before passed over the crossing, and, so far as disclosed, had no knowledge of and did not know that there was a crossing at the place in question, or that the team and wagon were approaching that or any other railroad crossing. It further appears that the team was approaching the crossing on a slow trot, and that all of those in the wagon did not know they were in fact approaching the railroad crossing, and did not know of the approach of the train, which was a fast passenger train running at a speed of about thirty-five miles an hour. Nor did the engineer know that he had collided with the wagon until he arrived at the next station, more than a mile distant from the crossing. The railroad crossing in daylight was visible for about 1,600 feet from the west, and the grade descended slightly towards the crossing, so that the engine at the time, in the language of the record, was "coasting" or running without exhausting steam in approaching the crossing. The engine and the team and wagon arrived at the crossing at the same moment of time, at about three-forty o'clock a. m., and the occupants of the wagon were thrown therefrom, some of them receiving more or less serious injuries, while Miss Martindale was killed outright. There is much evidence pro and con the question whether there was a headlight burning, whether any signals were given by the engineer in approaching the crossing. It was shown that the young man who drove the team was a competent driver. There was also evidence upon other phases of the case shedding more or less light upon the accident.

We could subserve no good purpose, however, in further detailing the facts in view of the peculiar circumstances, and in view that all of the questions of fact were for the jury, and for that reason, so long as there is any substantial evidence in support of every element necessarily included in the general verdict, we are bound by the verdict. We felt impelled, however, to set forth the foregoing facts so that the reader may have a better understanding of the law which we shall now proceed to consider.

The first question of law arises upon defendant's motion for a directed verdict in its favor, which the court denied.

The defendant duly excepted to the ruling and now assigns the same as error. The motion, so far as material here, was substantially based upon the following grounds: (1) That the deceased was guilty of contributory negligence as a matter of law; and (2) that the driver of the team and wagon was guilty of negligence as a matter of law in attempting to cross the railroad track, which negligence must be imputed to the deceased. In considering the grounds, we, as a matter of course, must apply the law to the facts and circumstances as they affected the deceased, and not as they may have affected some or all of the others who were in the wagon with her at the time.

In view of the foregoing statement, was the deceased guilty of contributory negligence? We confess our entire inability to discover any evidence or facts in this record **2** from which any negligence on her part can legitimately be inferred or deduced by any reasonable mind. The very authorities cited by counsel for defendant support the foregoing statement. Counsel cite section 503, 1 Thomp. Com. L. Neg., in which the author cites the duties of one who is injured at a railroad crossing while riding with another who owns and drives the vehicle which is injured in a collision. The author says that "if he (the person injured) is riding *by the side of the driver in an open carriage,* and the driver, on approaching a railway track, *fails to make any use of his faculties,*" etc., then, it is said, the person so riding must act to protect himself if necessary and if he can do so. Counsel also cite 33 Cyc. 1017, where the rule is stated that one riding in a carriage with a driver must avoid injury to himself *"where he has an opportunity to do so,* * * * and if *he is familiar with the crossing to look or look and listen for himself,* he is guilty of contributory negligence * * * if he fails to use proper care," etc. In *Whitman* v. *Fisher,* 98 Me. 575, 57 Atl. 895, also quoted from by counsel, it is said that "a person who is accompanying another upon a drive, and *who has an opportunity to observe and give notice of dangers that may be avoided,*" etc., must protect himself if he can. The italics in the foregoing excerpts are ours. We do not deem it necessary to quote further, since

the foregoing excerpts are quite sufficient to show that the situation in which the deceased was placed at and immediately prior to the accident clearly exculpate her from the charge of contributory negligence. As before pointed out, the deceased was a comparative stranger in the neighborhood, and at the time of, and immediately prior to, the accident she was visiting with friends and relatives who lived some miles distant from the railroad crossing in question. On the day of the accident, or perhaps the day preceding, she was invited by one, or perhaps two, of the young women who were in the wagon with her at the time of the accident to attend a dance on the evening of the night of the accident some miles west of where she was visiting. She accepted the invitation, and rode in the covered spring wagon we have mentioned with the young men and young women to and from the dance. In returning the young people were riding in the position before stated, and the deceased, being a stranger, knew nothing about the railroad crossing; nor had she the slightest opportunity either to warn others or protect herself against the impending calamity. It was shown that the team was gentle, and that the driver was a young man reared on a farm, and was a competent driver. If one riding in a vehicle in the nighttime with others can, under such circumstances, be found guilty of contributory negligence in case of a collision, then it would be utterly impossible to successfully avoid the plea of contributory negligence in any case. Such, however, is not the law, as clearly appears from the excerpts we have quoted from the authorities cited by defendant's counsel.

What has been said also answers the contention that the driver of the team was negligent, and that his negligence must be imputed to the deceased. We need not now pass upon the driver's negligence. What we now decide is that, even though it were assumed that the driver was guilty of negligence, yet his negligence cannot be imputed to the deceased. The question of imputed negligence is fully discussed in the cases of *Atwood* v. *Utah Light & R. Co.*, 44 Utah 366, 140 Pac. 137, and *Lochhead* v. *Jensen*, 42 Utah 99, 129 Pac. 347. Counsel for defendant, however, insist that both of those cases are distinguishable from the case

at bar. We cannot agree with counsel in that regard. As we view those cases, they are decisive of the question of imputed negligence as that question arises here. Counsel, however, pleaded and introduced in evidence a certain decision emanating from the Supreme Court of Idaho wherein it is contended that court had arrived at a different conclusion upon the question of imputed negligence. At the hearing however, counsel frankly conceded that the most that could be claimed for the Idaho decision was that it left the law upon the question of imputed negligence in Idaho somewhat in doubt. We are of the opinion, however, that there is nothing in the Idaho decision which in any way modifies the doctrine laid down in the two cases emanating from this court to which reference has been made, and we have discovered no reason why we should depart from the rule announced in those cases, and counsel has suggested none.

Nor can counsel's contention prevail that the result in this case should be different from the one reached in the Atwood Case because all of those in the wagon were engaged in a common or joint enterprise. We pointed out in the Atwood Case that when different parties are engaged in a common or joint enterprise, or where all have the power to direct or control the driver of the vehicle or the team, then, in case of a collision and consequent injury, the doctrine of imputed negligence has no application, and the parties may be guilty of contributory negligence as in other cases where negligence is involved. The mere fact that the deceased accepted the invitation of her girl friends to attend the dance is, however, not sufficient to charge her with being interested in a common or joint enterprise with those who were with her in the wagon at the time. Nor did she have any control or direction over the driver or team. True, the evidence showed that she was permitted to drive the team for some distance in going to the dance. That, however, is not controlling here. We cannot see why a different rule should apply in this case, so far as the deceased is concerned, than was held to apply in the Atwood Case. It is also assigned as error that the court withdrew the question of the deceased's contributory negligence from the jury. Counsel insist that under the facts and cir-

cumstances that question should at least have been submitted
to the jury for their determination. We have already dis-
cussed the facts relating to the young woman's acts and con-
duct. We can only repeat that we can discover nothing from
which reasonable men might find that she was guilty of con-
tributory negligence. Upon that question this case does not
materially differ from the Atwood Case, where we held the
court committed no error in withdrawing the question of
contributory negligence upon the part of the young woman
from the jury. We are of the opinion that the court's ruling
in withdrawing that question from the jury under all the
circumstances was proper.

It also is insisted that the court erred in charging the jury
as follows:

"You are further instructed that, where the operatives of
a train approach and enter upon a public crossing care-
lessly, and a person driving over the crossing is killed 4, 5, 6
as a consequence, no recovery of damages can be had
from the company if he himself was guilty of negligently
entering upon the crossing; for in such case he is guilty of
contributory negligence.

"But you are further instructed that, where a train is
negligently run across a public highway and collides with a
vehicle attempting to use the crossing, if a person in the
vehicle who is not driving the same and has no management
or control over it is killed, and such person is an unmarried
daughter, the father is not prevented from recovering dam-
ages because the driver of the vehicle was guilty of negli-
gence in entering upon the crossing. Under such circum-
stances the father has the right to sue either the railroad
company or the driver, or both, and if he brought suit against
the driver, the driver could not escape responsibility by claim-
ing that the railroad company was also negligent, and if he
brought suit against the railroad company, it could not claim
freedom from responsibility because the driver was also negli-
gent; *and in this case the plaintiff is entitled to recover if the
defendant was guilty of negligence in some of the particulars
alleged in plaintiff's complaint, and such negligence was the
proximate cause of the accident resulting in the death of his*

*daughter,* and no negligence of any one else could defeat the
plaintiff's right to recover except the negligence of the de-
ceased; and in this case you are instructed that the deceased
was not guilty of negligence.''

We have given the instruction in full, although those por-
tions relating to contributory and imputed negligence have
been already discussed and passed on.   Counsel, however,
especially except to that part of the instruction which we have
italicized, and they in their brief contend, and in the oral
argument vigorously insisted, that the court erred in so
charging the jury.   Much stress is laid upon the phrase that
the jury were authorized to find for the plaintiff if they
found that ''the defendant was guilty of negligence in some
of the particulars alleged in the complaint,'' etc.   In that con-
nection it is insisted that no fewer than five acts or causes of
negligence are alleged in the complaint.   In order to make
counsel's contention clear we have set forth the five different
acts or causes of negligence complained of at the beginning
of this opinion.   Counsel insist that under the charge the
jury could have found against the defendant if they found
any one of the five alleged causes or acts of negligence to
exist, and found in connection therewith that such acts were
the proximate cause of the injury.   In that connection it is
argued that there were several of the alleged acts or causes
of negligence which were not supported by any evidence.   It
is not unusual—indeed, it is quite usual—to charge that the
plaintiff must, by a preponderance of the evidence, establish
one or more of the particular acts of negligence set forth in
the complaint where more than one is pleaded, and that such
act must be the proximate cause of the injury complained of.
Such a charge is quite proper.   In giving such a charge the
court usually does no more than to limit the jury to the par-
ticular acts of negligence, whether of omission or commission,
that are specified in the complaint.   This is done to inform
the jury of the rule, which to all lawyers is elementary, that
the plaintiff must recover, if he recovers at all, upon the acts
of negligence pleaded.   Counsel, however, insist that, under
all the circumstances, the instruction complained of means
much more than that.   They insist that the court in effect

charged the jury that they could find for the plaintiff upon any one of the five causes or acts of negligence alleged in the complaint whether there was any evidence to support any particular act or cause of negligence or not. If that construction of the instruction were assumed to be the correct one, there would be much force to counsel's contention. It is, however, not necessary to determine whether counsel's contention shall prevail or not, for the reason that we have carefully examined into the evidence, and, after doing so, are convinced that counsel's contention that there is no evidence in support of several of the alleged acts or causes of negligence cannot prevail. At the hearing the writer was impressed with counsel's contention that no evidence was produced upon the question that a proper lookout had not been maintained by the fireman and engineer. It occurred to the writer, then, that inasmuch as the accident occurred in the darkness, at about three-forty o'clock in the morning, at a country road crossing with no habitation near, and which was not shown to have been frequented at that time of night, that at least some evidence was required other than the mere fact of the collision to show that no proper lookout was maintained by the train. After reading the evidence of both the fireman and engineer, however, there no longer remains any doubt in the mind of the writer regarding that question. They both testified that they not only did not look, but said that if they had looked they could and probably would have seen the team and wagon approaching the crossing. Indeed, the engineer testified that he could have seen the team approaching the crossing, and gave as a reason for not seeing it that it was not at the crossing at all; yet the evidence is clearly to the effect that there were marks in the very center of the roadway where it crosses the railroad track showing that the wagon had been struck and had been shoved along the rail in the direction the train was moving. Moreover, parts of the wagon and gearing, as well as several of the occupants thereof, were found on the pilot in front of the engine when the train arrived at the next station, which was about a mile northeast of the crossing. None of the trainmen, however, knew that any collision had occurred until they discovered the

persons and things on the pilot of the engine as just stated. There is therefore positive evidence that the trainmen did not look, and that if they had done so they would have seen the team and wagon. From all the evidence the jury could also have inferred that they could have avoided the collision had they exercised that degree of care which is required of them at public crossings. If the evidence had been left as it was when the plaintiff rested his case, it would be extremely doubtful, to say the least, whether, in view of the time, place, and cir-cumstances under which the accident occurred, there would be any evidence authorizing a finding that no proper lookout had been maintained, or that, even though such had been done, the accident could have been prevented by those in charge of the train. The defendant's evidence changed all that, not only with regard to the question of maintaining a lookout, but also inferentially with regard to several of the other acts or causes of negligence. While it is true that under all the circumstances it seems quite possible that the driver, as mat-ter of law, may have been guilty of contributory negligence barring recovery, yet, as we have pointed out, that question, in view of the deceased's position and conduct, is not control-ling.

We are of the opinion, therefore, that there is substantial evidence upon every essential element which it was necessary for the plaintiff to establish in order to recover. In view of that fact, we cannot interfere with the verdict. From what has already been said it also follows that the court committed no error either in charging the jury or in refusing certain requests of the defendant which were framed upon the the-ory of imputed and contributory negligence on the part of the deceased. The case was submitted to the jury upon the theory of the law as we have already held it to be, and hence no prejudicial error was committed.

The judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.

On Application for Rehearing.

FRICK, J.

Counsel for appellant have filed a petition for a rehearing

in which they vigorously insist that the writer stated the evidence of the engineer too strongly against him. The statement respecting the lookout of the engineer and fireman in approaching the crossing in question in the opinion which is objected to is as follows:

"After reading the evidence of both the fireman and engineer, however, there no longer remains any doubt that if they had looked they could and probably would have seen the team and wagon approaching the crossing. Indeed, the engineer testified that he could have seen the team approaching the crossing, and gave as a reason for not seeing it that it was not at the crossing at all."

There were two firemen on the engine at the time of the collision. One of them, in answer to the question whether he kept a lookout, testified: "I kept no constant lookout; no, sir." In answer to the question whether he was in the fireman's seat as the train approached the crossing in question he said: "I have answered that question a number of times, and I have told you no to that." Further, in answer to whether any one else was in the fireman's seat keeping a lookout at that time, he said: "I don't remember any one; no." The other fireman, after testifying that he was in the cab of the engine at the time the train approached the road crossing where the collision occurred, answered the following questions as indicated:

"Q. That is, you were sitting on the fireman's seat on the fireman's side of the cab? A. Sitting on the side of the seat. Q. And you were not looking out? A. No, sir. Q. The windows—you were not looking forward through the front window of the cab were you? A. No, sir. Q. You were not looking out of the side window of the cab? A. No, sir."

The engineer repeatedly said that he could have seen a team if one had been at or near the crossing in question.

"Q. You could see a team in that position that night without any trouble couldn't you? A. Yes, sir."

He further said that he did not see the "rig," that is, the wagon the plaintiff and her companions were riding in; that he did not know any team or wagon was either approaching the track or crossing it; that the reason he did not see the

team and wagon was because they were not at the crossing, that is, "there was no team there to see." He said that he did not look out of the side window of the cab, but said he looked ahead out of the front window on his side of the cab, which was the opposite side from which the team and wagon were approaching, and that he did not know that a collision had taken place until after the train had stopped at the next station, a mile or so distant from the crossing in question. The evidence is conclusive that the collision did occur; that at least some of the occupants of the wagon with which the train collided and certain parts of the wagon and harness were on the pilot when the train reached the station aforesaid. The testimony is clear and convincing that the collision occurred at the crossing to which both of the firemen and the engineer referred in their testimony, and to which testimony we have referred. If, therefore, we have stated the evidence too strongly against the engineer, it is because we have misinterpreted the real purport of what he testified to. We think no one can successfully maintain that the jury were not authorized to find from his testimony that he did not keep a proper lookout. He admits that he could have seen a team and wagon approaching the crossing, and that he would have seen them had they been there. The real reason he gives why he did not see them is that "there was no team there to see." In the very teeth of that statement he carried conclusive evidence of the collision on the pilot of the engine. That evidence he still had on the pilot when the train reached the next station, a mile distant from the crossing where the collision occurred. There can be no doubt, therefore, that the engine collided with the wagon, and that some of those riding in it were injured, while some were killed outright. Nor is there any room to doubt the fact that the collision occurred at the crossing in question. True, the engineer does not concede the latter fact. When all of his testimony is considered together, however, it merely amounts to this: That he could have seen a team and wagon approaching the crossing on the night in question; that he did not see any, and the reason he did not see it was because "there was no team there to see." From all this he and appellant's

counsel maintain that he kept a lookout. How, they say, can it be otherwise? The engineer, in effect says:

"I not only could, but would, have seen a wagon and horses had any approached the crossing; I did not see any there, because there were none. I looked out of the front window on the opposite side of the engine from whence the team and wagon approached, and did not see them; hence they were not there."

From all the engineer said, therefore, the conclusion is inevitable that, had he maintained a proper lookout, he, in all probability, would have seen the team approaching; and such a conclusion comes from the firemen's and engineer's statements. Counsel are too prone to overlook the fact that, after judgment, the statements of the witnesses against whom the jury has made findings must be taken most strongly against them. We cannot see how the jury could escape the conclusion that no proper lookout was maintained in the face of the firemen's and engineer's statements.

The other matters referred to in the petition relate to the court's instructions, and to the contributory negligence of the deceased. Those subjects are fully considered in the opinion, and nothing new is presented in respect to either of them.

The petition therefore should be, and it accordingly is denied.

STRAUP, C. J., and McCARTY, J., concur.