500 P.2d 1007

WINGETS, INCORPORATED, a Utah cor-
poration, Plaintiff and Respondent,

v.

Franklin BITTERS, a widower, et al.,
Defendants and Appellants.

No. 12578.

Supreme Court of Utah.

Aug. 28, 1972.

Henriod, J., concurred in result.

---

Walter G. Mann and Reed W. Hadfield, of Mann & Hadfield, Brigham City, for defendants and appellants.

L. Brent Hoggan, Logan, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff Wingets, Inc., as seller of business property on North Main Street in Logan, Utah, was granted a motion for summary judgment against defendants Bitters, buyers, for the sum of $92,392.21, as the balance due on the contract price of $130,000, which the seller had declared "immediately due and payable" on the ground that the buyers were in default. The latter appeal, contending that there are genuine issues of fact which if resolved in their favor would constitute a defense.

The contract was entered into on April 13, 1964. The payments specified were $20,000 down and $643.06 per month on the principal and interest at 5 per cent, which would pay out the $130,000 in 25 years. After there had been performance for a period of seven years, on February 22, 1971, the plaintiff served a written notice on defendants: setting out that three payments were due; the last being due February 15, 1971, totaling $1,929.24, and that as a consequence the plaintiff declared the total remaining balance immediately due and owing, in the amount of $94,443.14. It demanded that said amount be paid by March 5, 1971. The stated delinquency of $1,929.24 was delivered to the Bank, escrow holder, on March 1, 1971. In round figures defendants had paid about $36,000 on the principal, and $36,000 in interest, a total of about $72,000 on the contract.

The issue in controversy is whether the plaintiff had a right under the contract to so declare the entire balance due without giving defendants a 30-day notice and opportunity to remedy their default.

The provision of the contract upon which the dispute devolves is:

> In case of the failure of the parties of the second part to pay all payments promptly when due, whether of principal, interest, taxes or insurance, it being agreed that time is of the essence of this agreement, . . . then at the option of the party of the first part, they may rescind this agreement and be released from all obligations hereunder, whereupon all payments made, and all improvements erected thereon, shall be forfeited to the party of the first part as and for liquidated damages and as rental for said premises and it may retake possession of said property, or at the option of the party of the first part it may specifically enforce the provisions of this agreement by an appropriate action, or it may sue for the purchase price in any competent court, and for this purpose may declare all unpaid payments immediately due and payable, *provided however, that before rescinding this agreement the party of the first part shall serve on the parties of the second part by registered mail at the address set forth above 30 days written notice of its intention so to do during which time the parties of the second part* may perform and be purged from said default. [Emphasis added.]

The plaintiff urges that the emphasized language, which requires the seller to give the buyers 30 days' notice, applies only to a "rescinding" of the agreement in the technical sense, but that for the optional remedy it chose, of "declare[ing] all unpaid payments immediately due and payable . . . ." no such notice was required. It is on this basis that it seeks to justify its declaration that the entire remaining balance of $94,443.14 was due and must be paid within 11 days.

The position of the defendants is to the contrary. They urge that from the nature of the transaction and the context of the contract, the fair and reasonable interpretation of the provision requiring the seller to give the buyers a 30-day notice was to afford the latter some protection against an arbitrary action by the seller and allow a reasonable opportunity to remedy a default. They set forth in an affidavit, which stands uncontradicted, that this was their understanding; that after preliminary negotiations, and after the contract had been drawn up by the plaintiff's attorney, at a meeting of the parties in his office, the attorney stated that the said provision gave the buyers the benefit of a notice of 30 days in which they would have an opportunity to remedy *any* default that might occur. Inasmuch as there has been no denial of the affidavit the averment is taken as true.

Defendants urge that this explanation which plaintiff's attorney made is the reasonable and practical interpretation which persons of ordinary intelligence and expe-

rience would place upon the language of the contract, as opposed to the strained and technical interpretation contended for by the plaintiff. They contend alternatively, that if the plaintiff intended as it now asserts, it falsely and fraudulently induced them to enter into the contract with an unduly harsh penalty in the event of default, without allowing any opportunity to remedy it. It is as a consequence of the foregoing that the defendants argue that they should be allowed a trial and given an opportunity to present evidence as to the true intention of the parties in signing the contract.

There are some foundational rules which should be stated as a preface to our analysis of the problem thus presented. The primary one is that if the language of the contract is such that the intention of the parties is clearly and unequivocally expressed, it must be enforced according to its terms.[1] But conversely, if there is a basis in its language upon which the parties reasonably could have a misunderstanding with respect to its intent, then extraneous evidence can be received and considered to ascertain it.[2] Moreover, in making that determination, the court is not bound by any single provision or expression, but should look to the whole contract and its purpose.[3] It is further to be observed that the so numerous controversies which are constantly arising over the meaning of contracts, and even over such formal writings as statutes and treaties, compel recognition of the fact that many words and terms have, and are interpreted as having, various and differing meanings. This often is more accentuated in the retrospect when "the chips are down" after a dispute has developed. In looking more specifically at the instant controversy there are several further observations which have a bearing thereon.

If the plaintiff is correct in asserting that the 30-day notice requirement does not apply to the other options, each of which would in effect forfeit out the defendants, then there is no notice requirement whatsoever as to those other two options. In other words, the plaintiff seller could unilaterally choose one of the abrupt remedies, and without giving any notice to the defendant buyers, except only to inform them that they had been forfeited out, insist upon carrying out the option it had chosen, without allowing the buyers any opportunity whatsoever to remedy the default.

1. Ephraim Theatre Co. v. Hawk, 7 Utah 2d 163, 321 P.2d 221 (1958) ; Jones v. Acme Building Products, Inc., 22 Utah 2d 202, 450 P.2d 743 (1969).

2. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961) ; Continental Bank and Trust Co. v. Stewart, 4 Utah 2d 228, 291 P.2d 890 (1955).

3. Continental Bank and Trust Co. v. Bybee, 6 Utah 2d 98, 306 P.2d 773 (1957) ; Mathis v. Madsen, 1 Utah 2d 46, 261 P.2d 952 (1953).

These thoughts arise with respect thereto: If the buyers were to be given any notice at all with respect to any of the remedies allowed the seller in the event of default, one wonders why there should be a 30-day notice required as to one such remedy, and no provision for notice for the other two. It would seem quite reasonable for the defendants to believe in accordance with the advice which they assert the plaintiff's attorney gave them, that they would be given the 30-day notice and an opportunity to remedy default as to any method of forfeiture chosen by the seller (plaintiff).

When in such a contract one party is given an option, or choice, it is generally regarded as fair and equitable that he be obliged to notify the other party affected thereby and give him a reasonable opportunity to react thereto. It was undoubtedly the realization of this fact that prompted the plaintiff to give defendants the 11 days to raise the $94,000. If it be assumed that this 11 days was given because plaintiff thought defendants should have a reasonable time to raise the money, then it would seem that an issue of fact would exist as to whether the 11 days was in fact a reasonable time.

It is also to be noted that the plaintiff's urgence that the requirement of 30-day notice to the buyers must be understood in the restrictive and technical sense and only applies to "rescinding" the agreement confronts plaintiff with another difficulty. In the strict legal or equitable sense, the term "rescission" imports the concept of completely annulling a contract as if it had never existed. This includes the idea of restoring the parties to their former status, and the return by each to the other of what had been received under it.[4] It seems obvious that this is not the type of "rescission" or "rescinding" that was contemplated in the provision of the contract under scrutiny here.

■ There are other rules relating to the interpretation of contracts which tend to give support to the position essayed by the defendants: i. e., that they have raised an issue of fact as to what was intended by the language of the contract. One such rule is that inasmuch as the plaintiff had its attorney draw the contract, its provisions should be construed most strictly against plaintiff;[5] and this is especially true as to a forfeiture, which is enforced only when the terms are clear and

---

4. A plethora of cases so declare, including our own case of Peterson v. Hodges, 121 Utah 72, 239 P.2d 180; see also Swan v. Great Northern Ry. Co., 40 N.D. 258, 168 N.W. 657; Friedman v. Kennedy, D.C. Mun.App., 40 A.2d 72.

5. Ibid. and see also Huber & Rowland Construction Co. v. City of South Salt Lake, 7 Utah 2d 273, 323 P.2d 258 (1958); Seal v. Tayco, Inc., 16 Utah 2d 323, 400 P.2d 503 (1965).

unequivocal.[6] Another is that the defendants are entitled to the most favorable interpretation that could be placed upon this language by a person of ordinary intelligence and understanding and in the light of existing circumstances.[7]

Support for the defendants' contention that their understanding of the term "rescinding" of the contract was the more general sense, of any repudiation or forfeiture by the plaintiff, is also found in the dictionary definition. The verb "to rescind" and the present participle "rescinding" are defined in Webster's Twentieth Century Dictionary, unabridged, as:

Rescind v. t; rescinded, pt. pp; rescinding, ppr, (L. rescindere, to cut off, annul, from re, back and scindere, to cut.) 1. To abrogate; to revoke; to annul; to vacate.

It is further pertinent to observe here that where there is a choice, an interpretation which will bring about an equitable result will be preferred over a harsh or inequitable one.[8] In this connection it is argued that interpreting the contract to allow the defendants the 30 days in which to purge themselves of default, works no great hardship on the seller. It is always entitled to its full principal and interest, and has the property as its security. In contrast to this, the very strict construction contended for by the plaintiff is unduly harsh and oppressive upon the buyers.

The final observation is that a summary judgment which deprives a party of an opportunity to present his evidence should be granted only when it clearly appears that there is no issue of fact in dispute which if resolved in favor of the losers would entitle them to prevail.[9]

Upon analysis of the various matters above discussed, it is our opinion that there has been raised a genuine issue of fact: whether in the execution of the contract it was intended that if the seller decided to cancel out the rights of the buyers it was required to give a notice of 30 days

6. Green v. Palfreyman, 109 Utah 291, 166 P.2d 215; see also 1 Williston on Contracts, Sec. 602 A, pp. 333–4.

7. Auto Lease Co. v. Central Mutual Ins. Co., 7 Utah 2d 336, 325 P.2d 264 (1958); Jorgensen v. Hartford Fire Ins. Co., 13 Utah 2d 303, 373 P.2d 580 (1962).

8. Caine v. Hagenbarth, 37 Utah 69, 106 P. 945; Cummings v. Nielson, 42 Utah 157, 129 P. 619; Continental Bank & Trust Co. v. Stewart, 4 Utah 2d 228, 291 P.2d 890; Plain City Irrigation Co. v. Hooper Irrigation Co., 11 Utah 2d 188, 356 P.2d 625 (1960); 3 Williston on Contracts, Sec. 620.

9. See Housley v. Anaconda Co., 19 Utah 2d 124, 427 P.2d 390; Foster v. Steed, 19 Utah 2d 435, 432 P.2d 60; in its treatment of Rule 56, Vol. 3, Barron & Holtzoff, Federal Practice and Procedure, pages 61–62, Sec. 1231, states: "A movant is not entitled to summary judgment unless the facts conceded show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party could not prevail under any circumstances."

to allow them to remedy any default, as opposed to the more restrictive interpretation contended for by the plaintiff, that no notice was required. It is therefore proper that there be a plenary trial to have the issues determined. It is so ordered. Costs to defendants (appellants).

CALLISTER, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, J., concurs in the result.