**FIRST SECURITY BANK OF UTAH, N.A., a national banking association, Plaintiff and Respondent,**

v.

**Lawrence R. MAXWELL, Defendant and Appellant,**

v.

**June R. ROBERTS and Beverly D. Roberts, his wife, Defendants and Respondents.**

**No. 17766.**

Supreme Court of Utah.

March 3, 1983.

John R. Anderson, Vernal, for defendant and appellant.

James L. Wilde, Patrick B. Nolan, Provo, George E. Mangan, Roosevelt, for plaintiff and respondent.

HOWE, Justice:

This is an appeal from a judgment forfeiting the buyer's rights under a real estate contract and awarding attorney's fees to the escrow agent and sellers.

In June of 1974, defendants Roberts (sellers) and defendant Maxwell (buyer) entered into an installment real estate contract for the sale and purchase of some 300 acres of unimproved land in Duchesne County, Utah. The final payment was to be made in 1984. Buyer and sellers also entered into an escrow agreement appointing the plaintiff First Security Bank (bank) their escrow agent to receive all funds paid under the contract, and to hold certain documents of conveyance to be delivered as instructed.

Between 1974 and 1980 the buyer became delinquent several times and at others prepaid sums as much as one year in order to obtain release of 10-acre parcels as provided by the terms of the contract. At times the sellers accepted late payments and at others insisted that the buyer pay them attorney's fees which they had incurred in making demands upon the buyer to bring payments current.

On February 26, 1980 buyer was again delinquent and sellers' attorney mailed him written notice that sellers intended to terminate his rights under the contract if he did not pay $44.06 in taxes and "all of the accrued payments" within 30 days from the date of that notice. Concurrently, sellers' attorney instructed the bank to notify him before any payments were accepted, and under no conditions to accept any payments

after the expiration of 30 days from the date of the notice. Buyer paid the $44.06 property taxes to the bank the day before the notice went out. Two monthly payments of principal and interest were also paid and accepted on February 28. When the thirty days expired, sellers demanded a return of the escrowed documents held by the bank and the bank wrote the buyer on April 12 and asked for his consent to do so. On April 14 buyer tendered a payment of $1,210.80 to the bank but upon instructions of the sellers it was refused. Buyer made regular payments thereafter which were deposited into a special account pending the resolution of the dispute.

The bank, as a disinterested third party, initiated this action in interpleader asking for a determination of the rights of the buyer and sellers, and for its expenses in bringing this action. Sellers cross-claimed against buyer asking that buyer's rights under the contract be forfeited and that they be allowed to retain all sums theretofore paid as liquidated damages. The trial court declared the buyer's rights under the contract forfeited and awarded the sellers attorney's fees in the sum of $1,200. The court also found that the bank was a disinterested party who rightfully interpled the rights of buyer and sellers and awarded it $1,500 attorney's fees. Sellers were awarded reimbursement by the buyer of their share of the bank's attorney fees. Buyer filed a timely appeal seeking reversal of the judgment of forfeiture and of the award of attorney's fees to the bank and the sellers.

 We first dispose of the award of attorney's fees to the bank for bringing the interpleader action. Rule 22 of the Utah Rules of Civil Procedure clearly authorized the bank to file such an action in these circumstances. Moreover, the language of the escrow agreement gave the bank the option to await judicial determination before continuing its duties under the escrow agreement and granted it a lien for all actual and necessary expenses and liabilities incurred. See dictum in *Capson v. Brisbois,* Utah, 592 P.2d 583 (1979). In light of those provisions, the court below properly granted

the bank attorney's fees of $1,500 and we affirm that portion of the judgment.

We next decide whether the buyer defaulted warranting a forfeiture of all of his rights under the contract. A review of the contract and the escrow agreement persuades us that those two instruments must be construed together to determine the rights and duties of the parties. Both were signed by the buyer and the sellers, both contain references to the other, and the contract expressly provides that the escrow agreement shall govern the affairs of the parties concerning the escrow and the bank shall be bound by the escrow agreement only. The rule of law applicable here was stated in *Bullfrog Marina, Inc. v. Lentz,* 28 Utah 2d 261, 501 P.2d 266 (1972):

> Where two or more instruments are executed by the same parties contemporaneously, or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective rights and interests of the parties ...

*Id.* at 267 and other cases cited therein. See also *Katemis v. Westerlind,* Cal., 120 Cal.App.2d 537, 261 P.2d 553 (1953) and *Leiter v. Handelsman, et al.,* Cal., 125 Cal. App.2d 243, 270 P.2d 563 (1954).

Sellers argue that under the provisions of the contract buyer's tender on April 14 was too late, as the sellers' notice which was mailed on February 26 allowed only 30 days for the delinquency to be cured. This exclusive reliance on the language in the contract is untenable in view of the imperative instructions contained in the escrow agreement which required the bank to deliver a copy of sellers' demand for return of the escrowed papers to the buyer and contains the following additional instructions:

> If it appears by your records that all payments of principal or interest designated in said demand and for which the due date has actually arrived are fully paid, or if not, then if the same be paid before the expiration of thirty days after said copy of demand is so delivered or mailed to grantee, and within the same

time grantee also proves to your satisfaction that none of the other defaults, if any, specified in said demand existed at the time said demand was made, or if they did that they do so no longer, grantor's said demand *shall be desregarded* [sic] and *you shall continue* to hold said documents and property under the terms hereof and to receive the payments as above specified at the times and on the same conditions and to the same effect as if no such demand had been made; [Emphasis added.]

 We are well aware of the conflicting provisions in the contract and in the escrow agreement. The former provides that the buyer has thirty days after notice from the sellers in which to cure any delinquency or to face the forfeiting of his rights under the contract. The latter instructs the bank to disregard sellers' demand for a return of the documents if the buyer cures his delinquency within thirty days of receipt of a copy of the demand from the bank. Where courts have to choose between conflicting interpretations in the agreements under review, an interpretation which will bring about an equitable result will be preferred over a harsh or inequitable one. *Wingets, Incorporated v. Bitters,* 28 Utah 2d 231, 236, 500 P.2d 1007 (1972) and cases cited at note 8. In view of the fact that the place of payment was the bank, those instructions must be read to allow time for communications between the buyer and the sellers and thus for the resultant additional thirty days to cure any delinquency. The bank notified the buyer of sellers' demand for return of the escrowed papers on April 12 and the tender of $1,210.80 was made on April 14, well within the thirty days required by the escrow instructions.

Sellers next contend that tender of payment of $1,210.80 was insufficient to cure buyer's default. It appears that a further deficiency of $259.00 was first discovered during trial and that the buyer had been under the assumption that the $1,210.80 would have brought his payments current. Sellers' February 26 notice did not specify the amount claimed to be delinquent other

than $44.06 for taxes, which had in fact been paid on February 25. The error thus remained until trial, inasmuch as none of the subsequent payments tendered by buyer after April 14 and deposited in court cured that deficiency.

 At the outset we here reiterate a rule long recognized in our jurisdiction. The parties to a contract are perfectly free to provide for forfeiture as a remedy to the non-defaulting party and such right should not be lightly interfered with. *Biesinger v. Behunin,* Utah, 584 P.2d 801 (1978); *Call v. Timber Lakes Corp.,* Utah, 567 P.2d 1108 (1977); *Wingets, Incorporated v. Bitters,* supra; *Jacobsen v. Swan,* 3 Utah 2d 59, 65, 278 P.2d 294 (1954). However, we have limited that rule to agreements which have clear and unequivocal terms. *Wingets,* supra. We have disfavored forfeiture where there was ambiguity or lack of clarity. *Green v. Palfreyman,* 109 Utah 291, 166 P.2d 215 (1946); *Wingets,* supra. Similarly, we think forfeiture should be refused when the notice given to the delinquent buyer is indefinite or uncertain as to the amount he is to pay or the performance demanded of him. In *Grow v. Marwick Development, Inc.,* Utah, 621 P.2d 1249 (1980) in speaking of a forfeiture provision in a Uniform Real Estate Contract, we observed that such provisions are not self-executing and to enforce them some affirmative act on the part of the seller is required to notify the buyer what he "must do to bring the contract current." *Id.* at 1252. See *Pacific Development Co. v. Stewart,* 113 Utah 403, 195 P.2d 748, 749 (1948) for an example of a clear and definite notice.

 In the instant case, sellers' notice did not contain the amount demanded by the sellers. While it is true that the amount may have been readily ascertainable from the bank, buyer was not advised by the bank when he tendered the $1,210.80 to bring the contract current that it was insufficient. He was only told that his tender came too late, which as pointed out above was not correct. A person to whom a tender is made must, at the time, specify the objections to it, or they are waived.

*Hansen v. Christensen,* Utah, 545 P.2d 1152 (1976) and U.C.A., 1953, § 78–27–3. Had buyer been told that the amount was insufficient he presumably could have raised the remaining small amount within the 28 days remaining before he became in default. Sellers do not question the apparent good faith belief of the buyer that the $1,210.80 which he tendered would cure the delinquency. The monthly payments had on occasions been prepaid and at other times were in arrears. It is understandable that neither buyer nor sellers would know the exact status of the payments at any time. Neither discovered that fact until trial. As a matter of fact, the bank's manager had to borrow an adding machine during trial to ascertain whether or not the amount of $1,210.80 was insufficient. Under these circumstances, requiring the sellers to furnish buyer with a clear and definite amount to be paid to avoid forfeiture is only doing equity.

Our decision on the issues of attorney's fees must perforce evolve from the preceding holdings. We find that the sellers breached their covenants under the escrow agreement by instructing the bank not to accept further payments from the buyer when the instructions read clearly to the contrary. Therefore the award of attorney's fees to the bank in the amount of $1,500 should be paid by the sellers from the funds deposited in court for their benefit. We find that the buyer was delinquent until April 14, 1980 and should bear whatever attorney's fees are found to be reasonably owing the sellers for enforcing the contract until that date. Thereafter the parties are to bear their own fees and costs.

The judgment against the buyer is reversed. The case is remanded to the trial court to enter judgment in favor of the buyer and for a determination of attorney's fees payable by the buyer consistent with our instruction above.

HALL, C.J., STEWART, and DURHAM, JJ., and GEORGE E. BALLIF, District Judge, concur.

OAKS, J., does not participate herein.

BALLIF, District Judge, sat.