Rainer F. **HUCK**, Plaintiff and Respondent,

v.

Robert T. **HAYES**, Defendant and Appellant.

No. 14581.

*Supreme Court of Utah.*

Feb. 25, 1977.

---

1. 3 McQuillan, Municipal Corporations, 3rd Ed., Sec. 12.126a; 6 A.L.R.2d 960; 28 Am. Jur.2d, Estoppel and Waiver, Sec. 122.

David H. Schwobe, of Turner & Perkins, Salt Lake City, for defendant and appellant.

Craig S. Cook, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff Rainer F. Huck sued to compel specific performance of an Earnest Money Agreement to purchase a residential property at 1161 Bueno Avenue in Salt Lake City from the defendant Robert T. Hayes. Upon a trial to the court, it made findings and entered judgment in favor of the plaintiff.[1] Defendant appeals, contending that he was released from any obligation under the contract because plaintiff had failed to perform.

The defendant, who owned a buyer's interest in the above property through a Uniform Real Estate Contract, listed his interest for sale with A & B Realty Company, a licensed real estate broker. One of its agents, Ms. Marcia C. Evans, talked to the plaintiff, who submitted an offer of $10,600 total price for the property, to be paid $100 earnest money, approximately $5,500 on delivery of a deed and to assume the balance of about $5,000 which defendant owed on his contract, to be paid at the rate of $75 per month. After some negotiations about the price the parties agreed upon $11,600; and on March 3, 1974 the parties executed an Earnest Money Agreement on that basis, with a stated closing date of March 8, 1974.

The contract provided that the defendant would furnish a good and marketable title with a title insurance policy in the plaintiff's name. On March 7, 1974, Ms. Evans received the preliminary title report. It indicated that title to the property was in the name of Thomas H. and Suzanne S. Kirschbaum as joint tenants, that the property was burdened by a federal tax lien against them of $2,726.67. It also excepted two previous warranty deeds for failure to state marital status of the grantors; and it did not disclose what interest, if any, the defendant had in the property. On March 7, Ms. Evans advised each party of these title problems and they each instructed her to resolve them as soon as possible, so that a closing could be accomplished.

On March 8, the original closing date, the plaintiff had sufficient funds to make the

1. Consequently, where there is conflict in the evidence, we review it in the light favorable to the findings. See *Charlton v. Hackett,* 11 Utah 2d 389, 360 P.2d 176 (1961).

payment required by the agreement, but he neither offered to pay the money, nor was payment requested by the defendant or A & B Realty. On April 15, 1974, a meeting was held for the purpose of closing the transaction. At that time, it was reported that there would be a substantial delay in release of the federal tax lien even after payment had been made by check. Furthermore, in order to determine the exact amount payable to the defendant, it would be necessary to recompute the taxes and insurance costs he owed to the Kirschbaums for the previous seven years. The parties agreed that the release of the tax lien should be obtained and that defendant's equity should be so determined prior to closing.

A few days later Ms. Evans informed the defendant that the problems above referred to had been resolved and that closing could be had at any time, subject to his approval of the recomputation of his equity. It was at that time that the defendant first indicated to her that he was no longer interested in closing the transaction. In late May Ms. Evans again contacted the defendant to secure the closing. The defendant then stated that inasmuch as the plaintiff had failed to make the payment required by the contract by March 8th, he recognized no further obligations under it. On June 1, 1974, the plaintiff delivered to A & B Realty a cashier's check for the correct amount owing the defendant; and upon the defendant's continued refusal to cooperate, instituted this action on June 20, 1974.

■ On the basis of disputed evidence the trial court found that the delay in the closing of the transaction was due to failures on the part of the defendant. His assertion that he had only a buyer's interest in the property and could not then convey fee title provides him no advantage.[2] Nor is there any benefit to him to be found in his argument that the difficulty about the tax lien was not his fault, but that of the prior owners, the Kirschbaums. Neither was this the fault of the plaintiff. Inasmuch as under the contract it was the defendant's responsibility to furnish good title and a title insurance policy,[3] the furnishing thereof was a condition precedent to his right to demand payment from the purchaser (plaintiff).[4]

■ It is fundamental that a party to a contract should obtain no advantage from the fact that he is himself unable to perform.[5] Since the defendant had not come forth with the agreed title insurance policy demonstrating that he could convey a clear and marketable title as of the proposed closing date, March 8, 1974, he could neither demand payment by the plaintiff on that date, nor claim that the latter was in default for failing to make the payment.

■ These further observations are also pertinent: the agreement did not provide for any forfeiture or avoidance of the contract if the closing did not occur on the stated date, March 8, 1974. The evidence justified the view taken by the trial court that the negotiations between the parties indicated an on-going intent to carry out the contract as soon as the hereinabove mentioned title difficulties had been remedied; and that the defendant, for reasons of his own, had apparently changed his mind, and attempted to assert deficiencies for which he was himself responsible, to avoid going through with the deal. Therefore, when the plaintiff tendered his payment, it was the defendant who was placed in default by his failure to perform and the trial court was justified in granting specific performance of the contract.

2. That a seller is not generally obliged to have marketable title at all times during the pendency of his contract of sale, but need do so only when conveyance will be required under the contract, see *Leavitt v. Blohm,* 11 Utah 2d 220, 357 P.2d 190 (1960); *Woodard v. Allen,* 1 Utah 2d 220, 265 P.2d 398 (1953).

3. *Kopp v. Barnes,* 10 A.D.2d 532, 204 N.Y.S.2d 860 (1960).

4. 77 Am.Jur.2d, Vendor and Purchaser, Sec. 273; 52 A.L.R. 1460, 1470; *Jenson v. Richins,* 442 P.2d 636 (Wash.1968); *Brown v. Griffin,* 150 Mont. 498, 436 P.2d 695 (1968).

5. *Fischer v. Johnson,* 525 P.2d 45 (Utah 1974); *Cummings v. Nielson,* 42 Utah 157, 129 P. 619 (1912).

Affirmed. Costs to the plaintiff (respondent).

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.