Dick BASTIAN and Phil Taylor,
Plaintiffs and Appellants,

v.

CEDAR HILLS INVESTMENT AND LAND COMPANY, a partnership, Associated Industrial Developers, a California corporation, and East Technological Services Limited, a California corporation, Defendants and Respondents.

Nos. 16941, 16954.

Supreme Court of Utah.

June 19, 1981.

M. Dayle Jeffs, Provo, for plaintiffs and appellants.

Jeril B. Wilson, Provo, for defendants and respondents.

OAKS, Justice:

These cases involve a contract to purchase land for purposes of development. At issue are the existence and meaning of the contract and the measure of damages for its breach.

In No. 16941, Bastian and others, buyer, seek damages against Cedar Hills and others, seller, for non-performance. The district court gave a judgment for $35,000, which represents return of the buyer's earnest money. On appeal, buyer urges error in the court's failure to award damages for the difference between the market value and the contract price of the land, approximately $290,000. The seller's appeal in No. 16954 contends that the earnest money of $35,000 should have been declared forfeit, so buyer's judgment for that amount was error, and that the court further erred in dismissing seller's counterclaim for damages for buyer's recording of *lis pendens.* Both seller and buyer assign error in the court's refusal to award attorney's fees to them.

Although there have been some changes in the identity and names of some of the parties, for simplicity of description the parties will be referred to herein collectively as "seller" and "buyer," the terms used in the contract. For the same reason, the two earnest money contracts, which are essentially identical in terms, one dated November 15, 1977, for 105 acres and one dated a day later for 37.75 acres, will be described here as one contract with the consolidated acreages and amounts shown in brackets.

As with so many other controversies over the legal effect of contracts to purchase land, the most important inquiry in this case is the meaning of the document signed by the parties and the significance of their actions with respect to it. Rules of law are secondary, since such controversies rarely involve rules the parties cannot alter by agreement.

At issue in this case is the meaning and effect of a document signed by buyer and seller consisting of a printed form "Earnest Money Receipt and Offer to Purchase" with type-written inserts. The subject matter was 142.75 acres of undeveloped land lying just west of the town of Cedar Hills in northern Utah County, designated phases 2 and 3 of the Cedar Hills Development. The total purchase price was $1,934,675, with $35,000 paid as earnest money, $215,000 payable on the occurrence of certain contingencies described below, and the balance payable at the rate of about $620,000 per year, with interest.

After the earnest money was paid, the parties signed a formal contract amendment described below. Thereafter, the parties fell into controversy over the availability of sewer hookups, and none of the subsequent payments was made. Seller says buyer made no tender of the first payment, and buyer says seller was not prepared to deliver fee title at the time of closing because of encumbrances and title overlaps. Both of these omissions or deficiencies were found as a fact by the trial court, which also found that "neither the [buyer] or the [seller] was ready, willing and able to complete the transaction as provided in the option agreements and the amendment."

The key provisions of the contract are these typewritten additions (quoted here from the November 15 document, essentially identical in the November 16 document):

Buyer will pay [$215,000] on or before 30 days from annexation date of this property to Cedar Hills City and approval of preliminary plat and a sufficient culinary water supply, and use of the lagoon system for [42] homes. Buyer will pay [$619,891.66] on or before 10 months from

the date of annexation and other conditions above. . . . The culinary water supply referred to above in line 23 must be sufficient for total acreage. Seller agrees to release [16] acres to buyer when [$250,000] has been paid. All acreage released must be mutually agreed to by Seller & Buyer. Seller agrees to release [38] acres when the 1st annual payment is made, . . . . Buyer has 90 days from date of acceptance of this offer by seller to obtain plat approval, and annexation to Cedar Hills. If this is not accomplished within 90 days, then seller will refund earnest deposit of [$35,000] and release buyer from this agreement. If buyer does receive plat approval and annexation to Cedar Hills within 90 days and fails to make required first payment within 30 days, then buyer agrees to forfeit the earnest deposit of [$35,000] to Seller and release seller from this agreement. . . .

It is evident that the following four events were conditions precedent to the buyer's installment payment obligations for the subject land:

(1) annexation to Cedar Hills;

(2) approval of preliminary plat;

(3) sufficient culinary water supply; and

(4) availability of sewer lagoon system for 42 homes.

However, with respect to the forfeiture of earnest money or the parties' right to sue for damages, these conditions are of different character and effect. If buyer was unable to fulfill conditions (1) and (2) within 90 days, seller was obligated to refund the $35,000 earnest deposit. These two were therefore express conditions precedent to the enforceability of the contract. In contrast, there is no indication who was responsible to work for the fulfillment of conditions (3) and (4); perhaps they were partly or entirely dependent upon the efforts or approval of persons not parties to the agreement. But the buyer clearly assumed the risk of the non-fulfillment of conditions (3) and (4), since there was no

provision for refunding the earnest money deposit in the event of their nonfulfillment. In fact, the contract expressly provided for forfeiture of the earnest money if conditions (1) and (2) were fulfilled and buyer then failed to make the required first payment within 30 days. In that event, seller could not sue buyer for the balance due under the contract because conditions (3) and (4) were conditions precedent to the buyer's obligation to make the $215,000 and subsequent payments. By the same token, the non-occurrence of conditions (3) and (4) would not give buyer a right to sue seller for damages for non-performance since the terms of the contract made them only conditions precedent to the buyer's installment payment obligations, not events or performances that were promised or warranted by the seller.[1]

Against this background, we come to the parties' conduct under the contract, referring here only to those actions essential for the disposition of these appeals.

Buyer paid the $35,000 earnest money to seller. Annexation was accomplished in December, 1977. The preliminary plat was approved in January, 1978. About the first week of February, 1978, before buyer had made the $215,000 payment, the parties signed an undated "Amendment to Earnest Money Receipts and Offers to Purchase dated November 15, 1977, and November 16, 1977," containing terms accomplishing the following: Seller agreed (1) to transfer its interest in certain water shares to the town of Cedar Hills, "thereby allowing for sufficient culinary water supply respecting Phases 2 and 3" pursuant to the contract, and (2) to dedicate approximately 14 acres of land to the town of Cedar Hills to facilitate access to buyer's first release of property. Buyer agreed: (1) that "All conditions mentioned in the Earnest Money Receipts and Offers to Purchase mentioned above obligating Buyer's first payment therein are hereby deemed satisfied as of January 4, 1978"; (2) that buyer would pay

---

1. Buyer could probably waive the non-occurrence of conditions (3) and (4) and proceed with the contract if it chose, since these conditions seem to have been for the exclusive benefit of the buyer. But there is no evidence or argument that buyer did so in this case.

$215,000 "upon the signing of this agreement," and make the second payment for phase 2 on October 4, 1978, and (3) if the October 4, 1978, payment is not made in time, seller, at its option, may declare the contract terminated and retain all moneys advanced to date, clearing its titles by the recording of quitclaim deeds to be given by buyer and held in escrow.

The parties met in the office of a title company on February 17, 1978, to close the transaction. Because of questions raised about the number of sewer hookups available for the development of the property, no documents were signed and no money was paid at this time or thereafter. Notwithstanding the contract "Amendment" described above, neither party performed any of its promises that called for any immediate action. Seller did not transfer its interest in the water shares. Buyer did not pay the $215,000. The evidence is in dispute and there is no finding on whether seller could have conveyed good title to the first release acreage (16) at this time.

Each party now blames the other for the breakdown of the transaction, buyer seeking damages for non-performance by the seller's failure to provide the sewer hookups and to be able to give good title to the entire tract on the closing date, and seller seeking forfeiture of buyer's earnest money for its failure to pay the $215,000 and otherwise proceed with the transaction. We have concluded that the trial court achieved an appropriate resolution of this controversy, and affirm its judgment in both appeals.

■■■ Buyer cannot recover damages from seller in No. 16941 because, buyer's promise being contingent upon conditions that had not occurred, the contract failed for want of consideration. *Petersen v. Intermountain Capital Corp.*, 29 Utah 2d 271, 508 P.2d 536 (1973). Conditions (3) and (4) not being fulfilled (or waived by buyer),

buyer was under no enforceable obligation to pay the balance due, which meant that seller was under no enforceable obligation to convey, and the contract therefore failed by its own terms. The non-fulfillment of conditions (3) and (4) was not actionable by buyer because seller had made no promise that those conditions would occur.[2] *Restatement (Second) of Contracts* § 251(3) (Tent. Dr. # 7, 1973). The provision in the contract Amendment to the effect that "all conditions . . . are hereby deemed satisfied as of January 4, 1978," does not change this conclusion since that Amendment agreement also failed for want of consideration, neither party performing any of their current promises under it and both treating it as if it did not exist.[3]

■■■ With respect to No. 16954, buyer's earnest money of $35,000 would normally be forfeited under the language of this contract, but that would be inappropriate and inequitable in the peculiar circumstances of this case. While seller was not contractually bound to fulfill conditions (3) and (4), it was legally bound not to frustrate the fulfillment of those conditions, especially when their non-occurrence would personally benefit seller by forfeiting buyer's earnest money. *Ferris v. Jennings*, Utah, 595 P.2d 857 (1979); *Zion's Properties, Inc. v. Holt*, Utah, 538 P.2d 1319, 1321 (1975). There is sufficient evidence here that seller, through its control of the water, its ownership of the sewage lagoons, and its business or legal relationships with the town of Cedar Hills, was at least partly responsible for the non-occurrence of conditions (3) and (4). In that circumstance, buyer is excused from the consequences of non-occurrence and is entitled to restitution of its earnest money. *Restatement (Second) of Contracts* §§ 231 and 251 *com. b* (Tent. Dr. # 7, 1973) and § 391 *com. a* (Tent. Dr. # 14, 1979). The

---

**2.** This is further evident from the fact that in the contract document listing of "special improvements [which] are included in this sale" the symbol for "no" was entered opposite "sewer."

**3.** Seller's argument that the Amendment was a waiver of "any requirement that [seller] provide sewer hookups" is likewise erroneous, but immaterial because, as noted above, there was no such requirement or promise.

trial court was therefore correct in giving buyer a judgment for its recovery.[4]

▉ Seller's assignment of error for the dismissal of its counterclaim is also without merit. Buyer initially sued for specific performance, filing the statutory *lis pendens*, which buyer promptly released when it dismissed the specific performance count and proceeded to trial on the claim for damages. There is no suggestion that the specific performance claim was frivolous or put forward only for purposes of obstruction or delay. Any damages incurred in this circumstance are not actionable. *Hanson v. Kohler*, Utah, 550 P.2d 186 (1976); *Bagnall v. Suburbia Land Company*, Utah, 579 P.2d 917 (1978).

In both cases, the judgment of the trial court is affirmed. No costs are awarded.

MAUGHAN, C. J., and HALL, J., concur.

HOWE, Justice (dissenting).

I dissent. I do not agree with the statements in the majority opinion that the earnest money agreements failed for want of consideration, and that the amendment agreement failed for the same reason. I also disagree with the statement that both parties have treated the amendment agreement as if it did not exist. To the contrary, the seller relies upon it very heavily since it contains the "waiver" provision which it thinks aids its position, and the buyer relies upon the amendment agreement as the basis of the seller's promise to transfer water shares to the town of Cedar Hills. But even if both parties treated it as if it did not exist, it is nevertheless binding on them and this Court cannot disregard it.

I do not agree with the majority opinion that "conditions" 3 and 4 of the earnest money agreements are non-promissory and that the buyer assumed the risk of their non-fulfillment. Neither party contends that. They do not dispute that the seller was made responsible for them. Indeed, the seller's agent on January 17, 1978, wrote the buyer acknowledging its obligation to furnish water and use of the lagoon system as follows:

Dear Sirs:

I have been instructed to notify you that the *conditions* and *performances required of the sellers*, Cedar Hills Development Co., as contained in the subject Earnest Money Receipts and Offers to Purchase have been met by the sellers and the sellers hereby notify you that [$215,-000 is due and payable within 30 days of January 5, 1978]. . .

Conditions of the subject agreements are as follows:

1. *Annexation*

   The subject properties were annexed to Cedar Hills on December 31, 1977.

2. *Preliminary Plat Approval*

   Preliminary Plat Approval was granted by the Cedar Hills Town Council on January 5, 1978.

3. *Sufficient Culinary Water Supply*

   Cedar Hills has 300 connections available to it from Manilla Culinary Water Co. Of these, approximately 220 do not have issued building permits or homes using them. In addition, we understand that Manilla Culinary Water Co. has water rights in excess of approximately 800 connections that are not committed at the present time. Therefore, there is a sufficient culinary water supply to satisfy the needs of the subject properties for residential use.

4. *Use of Lagoon System for 30 and 12 Homes Respectively*

   It is our understanding that at the Cedar Hills Town Council meeting when preliminary approval was granted that it was understood that the lagoon would be available for 30 and 12 homes respectively.

[Emphasis added.]

\*   \*   \*   \*   \*   \*

The trial court found that buyer in the following paragraph 2A of the amendment

---

4. Cf. *Johnson v. Carman*, Utah, 572 P.2d 371 (1977); *Young v. Hansen*, 117 Utah 591, 218 P.2d 666 (1950).

agreement waived the performance of condition (4):

> Buyer agrees as follows: All conditions mentioned in the Earnest Money Receipts and Offer to Purchase mentioned above obligating buyer's first payment therein are hereby deemed satisfied as of January 4, 1978.

Assuming that the above paragraph constitutes a waiver of the seller's obligation regarding sewer as contained in the earnest money agreements, the amendment agreement added a further provision not found in the earnest money agreements that the seller would transfer certain shares of water to the town of Cedar Hills so that it in turn could furnish an adequate water supply for the subdivision. It is not contended by seller that this obligation was waived. As to this transfer, no finding was made by the court as to whether the seller was ready and prepared to perform. The buyer refers us to testimony that the water certificates were not available to seller until it had paid the entire indebtedness which it owed on its contract to purchase the land from its vendor. It appears that at the closing the seller was not prepared to transfer those shares as it had agreed. It is not clear, however, whether with the $215,000 which was to be paid to them by the buyers, they could have obtained the necessary certificates.

The amendment agreement also imposed on the seller the obligation to dedicate to Cedar Hills an easement which would provide access for the buyer to reach the 16 acres which were to be conveyed to him at the time of closing. The trial court made no finding as to whether the seller was prepared to fulfill that obligation.

It appears that at the time of closing the parties met and spent hours of time discussing the problems of water and sewer, and that they did not actually reach the matter of whether the seller had good and marketable title to deliver to the buyer to the 16 acres which it was then obligated to convey. The trial court made no specific finding on the matter of the title to the 16 acres, but only made a general finding as follows:

> The defendant was not prepared or ready to deliver a good and marketable fee title to the premises purchased at the time of closure.

The evidence as to the status of the title to the 16 acres is conflicting. Buyer maintains that the seller was not ready to convey good and marketable title to it, while seller maintains that it was "definitely possible" that it could have done so. It is also unclear as to whether all encumbrances on the 16 acres could have been paid and removed by the use of the $215,000 payment which was due to the seller.

I cannot agree with the trial court that the buyer's failure to make formal tender of the $215,000 payment disqualifies him from an action for damages for non-performance of the contract if seller was not prepared to deliver a good and marketable title to the 16 acres. The court found that the buyer had funds available to make the $215,000 payment. Under these facts, the case of *Huck v. Hayes*, Utah, 560 P.2d 1124 (1977), is dispositive. There the seller and buyer met at a closing and the court found that the buyer had sufficient funds to make the required payment, but he neither offered to pay the money nor was he requested by the seller to make payment. The preliminary title report indicated that title to the property was in the name of persons other than the seller, and the property was subject to a federal tax lien of $2726.67. In the suit by the buyer to compel specific performance, this Court stated:

> Inasmuch as under the contract it was the defendant's responsibility to furnish good title and a title insurance policy, the furnishing there was a condition precedent to his right to demand payment from the purchaser (the plaintiff).
>
> It is fundamental that a party to a contract should obtain no advantage from the fact that he is himself unable to perform. Since defendant had not come forth with the agreed title insurance policy, demonstrating that he could convey a clear and marketable title as of the proposed closing date, March 8, 1974, he could neither demand payment by the

plaintiff on that date nor claim that the latter was in default for failing to make payment.

I would hold that under these circumstances where the buyer had the funds available and was ready to make his payment and if the seller could not convey good and marketable title to the 16 acres which were then to be released, it would have been indeed a useless act for the buyer to have formally tendered the funds. *Huck v. Hayes*, supra.

It is significant to note that following the unsuccessful closing held on February 17, 1978, the buyer tried on at least two subsequent occasions to re-schedule a closing and in each instance notified the seller that he was still ready to perform. Buyer wrote to seller on March 13th asking for a closing on March 17th. The counsel for the buyer also wrote seller on February 23, 1978, and informed it that buyer was ready to close within 10 days.

I would reverse the judgment and remand the case with instructions to the District Court to make Findings of Fact on the following questions:

1. Was the seller ready to transfer the water shares to the town of Cedar Hills, and prepared to dedicate to Cedar Hills the easement for access to the 16 acres?

2. Was the seller prepared to deliver good and marketable title to the buyer to the 16 acres?

In both of the above, the seller should be allowed the use of the $215,000 payment to assist it to meet those obligations. Based on those additional findings, judgment should be entered accordingly.

STEWART, J., concurs in the dissenting opinion of HOWE, J.