Alan C. REED, Plaintiff and Appellant,

v.

Vaughn ALVEY, C. Howard Alvey, and Michael Alvey, d/b/a C. Howard Alvey & Sons, Defendants and Respondents.

No. 16150.

Supreme Court of Utah.

April 21, 1980.

---

**22.** See U.C.A., 1953, 78–22–1.

Thomas N. Crowther and John Parsons of Parsons & Crowther, Salt Lake City, for plaintiff and appellant.

Harold A. Hintze, Salt Lake City, for defendants and respondents.

MAUGHAN, Justice:

The plaintiff appeals the District Court's order dismissing his equitable action for the specific performance of a realty sales contract. We reverse. All statutory references are to Utah Code Annotated, 1953, as amended. Costs to Appellant.

In April, 1976, the plaintiff, Alan C. Reed, hereinafter Reed, was contacted by Richard Lambert, hereinafter Lambert, concerning the purchase of a fourplex apartment building which the defendants, Vaughn Alvey, C. Howard Alvey and Michael Alvey, in their partnership capacity as C. Howard Alvey & Sons were planning to construct.

At the time of the initial interaction between Reed and Lambert, the partnership was negotiating for the purchase of four lots located at the intersection of Hillview Drive and Ninth East Street, Salt Lake City, Utah. The original plan involved the purchase of four lots at this location and the construction of a fourplex unit on each lot. Lambert, acting as an agent of the partnership, initially contacted Reed for the purpose of acquiring qualified buyers for the fourplex units to facilitate the acquisition of necessary construction loan financing.[1]

On April 23, 1976, Lambert presented Reed with a standard form earnest money receipt and offer to purchase which provided in pertinent part for the sale of real property situated at the corner of Hillview and Ninth East, for a total purchase price of $70,000, to which a $500 paid deposit

would apply. Reed signed the agreement and paid Lambert the required $500 deposit. Subsequently, Michael Alvey signed the agreement for the partnership and endorsed the deposit check over to Lambert as partial payment of his commission for the sale of the unit.[2]

Subsequently, the partnership procured the necessary construction financing and commenced construction of fourplex units on three of the four lots.[3] Although Reed did not communicate further with the defendants for approximately eleven months, he did monitor the construction of the fourplex units at regular intervals during the following year and complained to Lambert about the dilatory efforts of the defendants in the construction.

On March 23, 1977, Reed received a letter from the partnership informing him the property would be available for closing in two or three weeks. The letter also required the plaintiff deposit $13,500 into an escrow account at Zions First National Bank. Although disputing the necessity of depositing this money under the terms of the sales contract, the plaintiff complied with the request and deposited the said amount on April 8, 1977.[4]

However, construction progress was again stymied, and the plaintiff removed the money from the non-interest bearing escrow account on May 20, 1977.[5] During this period Reed tried repeatedly to communicate with one of the members of the partnership. These efforts were unsuccess-

1. The acquisition of a construction loan by the partnership was conditioned by Zions First National Bank, Salt Lake City, Utah, upon the partnership contracting with qualified buyers for the sale of the proposed unit.

2. Buyers were procured for the other units by a similar procedure.

3. The partnership was unable to purchase the fourth lot which was located at the corner of the intersection and, therefore, could not build a unit there. The defendants' contention that this was the lot conditionally purchased by Reed is abrogated by the testimony of Lambert who while explaining that he was initially going to take the corner lots stated: "Well, I told my—" I said, "Well, we've got the three earnest monies and I still would like the unit but

these guys are committed and if someone fails or folds up the deal, then I, will—you know— take whatever is left of that—you know—it doesn't work out."

4. In a telephone conversation Vaughn Alvey informed Reed the defendants wanted the money deposited as evidence of his ability and willingness to consummate the transaction.

5. Reed testified the principal reason he removed the money from the escrow account was because the money was earning no interest. He alleges the withdrawal of the money was not a repudiation of the deal. He contends that at all times he was ready, willing and able to perform his part of the bargain.

ful and the plaintiff eventually brought this action for specific performance of the sales contract.

Following the presentation of evidence at trial the court made Findings of Fact and Conclusions of Law. Under the latter, the District Court found the earnest money receipt and offer to purchase too vague, incomplete and ambiguous to be capable of enforcement by a decree of specific performance. The court also concluded the plaintiff failed to establish a legally enforceable contract, or alternatively, the plaintiff failed to establish he complied with the terms of the contract by performing or offering to perform his portion of the agreement. The District Court subsequently denied the relief sought by the plaintiff, and dismissed the case.

On appeal, the plaintiff contends these conclusions of law are erroneous and require reversal by this court. We agree.

■ In cases of equity this Court is authorized to exercise a broad scope of review encompassing both questions of law and questions of fact.[6] While we have recognized the trial court's advantageous position in relation to questions of fact,[7] when the trial court has based its rulings upon a misunderstanding and misapplication of the law, where a correct one would have produced a different result, the party adversely affected is entitled to have the error rectified in a proper adjudication under correct principles of law.[8]

■ Before specific performance will be employed by the courts to enforce a contract the terms of the agreement must be reasonably certain so the parties know what is required of them, and definite enough that the courts can delineate the intent of the contracting parties.[9] In reviewing the written agreement evidencing the contract, and any ambiguity inherent in the language used, extrinsic evidence may be considered by the court to delineate the intent of the parties and the enforceability of the contract.[10] Thus, courts are provided a means by which they can look beyond the terms found in the written agreement to ascertain the intent of the contracting parties. If from this examination of the transaction the courts determine the actual contract is certain and the obligation and rights of the parties defined, then they may employ their equitable powers to enforce the contract via specific performance.[11]

■ Application of this maxim to the present situation mandates a result contrary to that reached by the trial court. Although the written agreement's description of the property involved, i. e., "corner of Hillview and Ninth East," is concededly vague and incomplete on its face, the extrinsic evidence presented by the plaintiff concerning the transaction defines the subject matter in question in sufficient detail to support specific performance.

**6.** The Utah Constitution, Article VIII, Section 9, provides: ". . . in equity cases the appeal may be on questions of both law and fact . . . ."

**7.** See *Pagano v. Walker*, Utah, 539 P.2d 452, 454 (1975).

**8.** See *Ferris v. Jennings*, Utah, 595 P.2d 857, 859 (1979).

**9.** *Kier v. Condrack*, 25 Utah 2d 139, 478 P.2d 327 (1970); see also 71 Am.Jur.2d, Specific Performance, Sec. 33, p. 53. ("For specific performance is demanded that degree of certainty and definiteness which leaves in the mind of the court no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is to compel to be done . . . in determining whether a contract is too uncertain to be specifically en-

forced, the test is whether the parties understood by the terms used what was intended in the agreement, and whether their minds met with respect thereto.")

**10.** In *Continental Bank and Trust v. Stewart*, 4 Utah 2d 228, 291 P.2d 890 (1955) we explained: ". . . where, because of vagueness or [ambiguity] in the language used, the intent of the parties is in question, the court may consider the situation of the parties, the facts and circumstances surrounding the making of the contract, the purpose of its execution, and respective claims thereunder, to ascertain what the parties intended." 291 P.2d at 891–92.

**11.** See *Cummings v. Nielson*, 42 Utah 157, 129 P. 619 (1912). ("It is elementary that in equity that is certain which can be made certain.")

The evidence presented at trial established the acquisition by the defendants of three lots located generally at the intersection of Hillview and Ninth East.[12] After acquiring the lots, the defendants began the construction of a fourplex apartment unit on each lot. The construction financing was made available by Zions First National Bank, after the defendants acquired qualified buyers for each of the units. The agreement between Reed and the defendants fulfilled this condition precedent to the release of construction funds for use by the defendants.

▇▇ Following the negotiations between Reed and Lambert and the signing of the agreement, Lambert was paid a commission by the defendants for the sale of the property.[13] During the construction of the units the plaintiff met with Lambert and the purchasers of the other two units to decide which specific unit the purchasers preferred.[14] After the subsequent agreement between the purchasers concerning the distribution of the specific units, the lots were denominated as belonging to the individual buyers.[15] According to the testimony of Lambert, who was acting as an agent of the partnership throughout the transactional period, the defendants made no objection to the purchasers choice of lots. Finally, the defendants contacted the plaintiff and requested the deposit of $13,500 in an escrow account to evidence his financial ability to close the deal. This communication occurred after the selection of the specific units by the purchasers and before what the defendants represented would be the closing date of the transaction.

Thus, everyone connected with the deal knew what land was involved [16] and the ambiguous nature of the terms used in the written agreement when viewed in light of the extraneous evidence presented at trial does not render the contract unenforceable or defeat an action for specific performance.

Neither does the "terms to be arranged" condition present in the initial agreement defeat the enforcement of the contract. The earnest money receipt and offer to purchase provided the total purchase price of the property would be $70,000 which would be payable upon "terms to be arranged." The trial court determined the inclusion of this language rendered the agreement subject to future negotiation and therefore unenforceable. We disagree.

▇▇ There is no principle of equity that demands all the terms of the contract must be set forth in the written agreement.[17] Rather, although an agreement is uncertain or incomplete in some respects, its specific enforcement may nevertheless be decreed where the uncertainty relates to matters which the law makes certain or complete by presumption, rule or custom and usage.[18]

▇▇▇ Where there is no agreement concerning the terms of payment this Court

---

12. The fact the defendants are unable to purchase a lot on the exact corner of the intersection does not negate the inclusion of the other lots within the language used in this agreement; see supra note 3.

13. In fact, Michael Alvey endorsed the plaintiff's original $500 check over to Lambert as part payment of the commission due.

14. The fact the vendee has the right to select the specific property subsequent to the initial agreement does not render the agreement uncertain or invalid. In such a situation nothing more has to be agreed upon by the parties and the contract is enforceable. See *Calder v. Third Judicial District Court*, 2 Utah 2d 309, 273 P.2d 168 (1954).

15. Of the three lots, one was in the possession of the original buyer at the time of the trial, one was sold to a secondary buyer, and the third which was denominated as belonging to the plaintiff was in the possession of the defendants.

16. See *Shull v. Sexton*, 154 Colo. 311, 390 P.2d 313 (1964).

17. *Janssen v. Davis*, 219 Cal. 783, 29 P.2d 196, 198 (1934).

18. *Shull v. Sexton*, supra note 16, at 316.

will alleviate the uncertainty of this aspect of the contract by requiring full payment at the time of the tender of the conveyance.[19] When the major aspects of a contract are specified with requisite certainty, this Court will not allow incidental details such as the terms of payment in a contract for the sale of realty to deny specific performance.[20]

Finally, we turn to the conclusion of the trial court that the plaintiff cannot maintain an action for specific performance because he has failed to perform or offered to perform his portion of the agreement. Generally, in a suit for specific performance of a contract for the sale of realty, the purchaser must show that he paid the purchase price, or tendered it, to the defendant prior to the commencement of the suit. However, an action for specific performance may also be maintained if the plaintiff presents an excuse for his failure to make such payment or tender and avers his ability, readiness and willingness to pay the contract amount.[21]

In the present case the payment of the purchase price was contingent upon the completion of the construction of the fourplex unit.[22] Since, prior to the institution of this suit, the defendants had failed to complete construction, the plaintiff was under no obligation to tender the full purchase amount prior to the present litigation.[23] The plaintiff's ability and willingness to tender the purchase amount as averred in his complaint is sufficient to support a suit for specific performance of the contract in this situation.[24]

The plaintiff presented evidence defendants have subsequently encumbered the land in question. Specific performance of the contract requires the removal of this encumbrance prior to the plaintiff taking

**19.** See *Shull v. Sexton,* id., at 318. In *Shull* the Colorado Supreme Court reached a similar conclusion construing similar language. In reaching this conclusion the Court quoted: " 'All that is needed to make a valid contract for the payment of money is the promise to pay the consideration named. . . . The real test as to whether the contract is complete is: Can it be specifically performed? Can it be specifically enforced? The vendor can be told to convey and the vendee can be told to pay simultaneously, all within the language and the clear legal meaning of the contract . . . .' " [Quoting from *Swedish-American Nat. Bank v. Merz,* 179 N.Y.S. 600 (1919)].

**20.** *Kier v. Condrack,* supra note 9, 478 P.2d at 330, ["But neither party should be permitted to use the reservation of 'terms' to get more than they had promised: the plaintiff to get more land, or the defendants to get more money, nor either to renege on the bargain . . . ."]; cf. *Ferris v. Jennings,* supra note 8.

**21.** 71 Am.Jur.2d, Specific Performance, Sec. 65, p. 94.

**22.** This Court has recognized that where there is an agreement on the part of one to convey property and on the part of another to pay a definite sum, payment and conveyance are concurrent acts, unless a contrary intention appears. *Johnson v. Jones,* 109 Utah 92, 97, 164 P.2d 893, 895 (1946). In the present case no contrary intent was evidenced. In fact the evidence at trial indicated the language concerning future terms was included because the defendants did not want to be committed to a specific completion date and the parties anticipated full payment by Reed upon conveyance of the property.

**23.** See *Leaf v. Codd,* 41 Idaho 547, 240 P. 593 (1925). ("And in a suit for specific performance of a contract to convey land, the vendor, to make the plaintiff's delay available as a defense, must have performed or been ready and willing to perform all the terms of the contract stipulated for on his own part."); it is a basic premise of equity that the law will never compel a person to do that which is vain or useless. See *Thomas v. Johnson,* 55 Utah 424, 186 P. 437 (1919).

**24.** *Cummings v. Nielson,* supra note 11, 129 P. at 623; see also *LeVine v. Whitehouse,* 37 Utah 260, 109 P. 2 (1910); the fact the plaintiff's removed the $13,500 from the escrow account does not alter this conclusion or defeat their suit for specific performance. The plaintiff removed the money only after several weeks had passed while the promised construction was still incomplete. One party to a contract cannot by willful act or omission make it impossible or difficult for the other party to perform and then invoke the others nonperformance as a defense. The failure of the defendants to finish construction of the unit within reasonable time after the plaintiff's deposit of the money in the escrow account prevents them from complaining about the eventual withdrawal of the money. See *Ferris v. Jennings,* supra note 8, at 859; *Fischer v. Johnson,* Utah, 525 P.2d 45 (1974).

possession of the property.[25] This can be accomplished either by a reduction in the purchase price, in the amount of the encumbrance, or payment of the total price after defendants remove the encumbrance.

CROCKETT, C. J., and HALL, WILKINS and STEWART, JJ., concur.

---

**25.** See 71 Am.Jur.2d, Specific Performance, Sec. 137, p. 177.