Robert L. BARKER, Plaintiff, Appellant, and Cross-Respondent,

v.

Dr. Howard R. FRANCIS, Deanne Tanner Francis, Dr. Larry Francis, and Anne Banks Francis, Defendants, Respondents, and Cross-Appellants.

No. 860151-CA.

Court of Appeals of Utah.

Aug. 13, 1987.

Jackson Howard, Danielle Eyer Davis, Howard, Lewis & Petersen, Provo, for plaintiff, appellant and cross-respondent.

Arthur H. Nielsen, Nielsen & Senior, Salt Lake City, for defendants, respondents, and cross-appellants.

Before BILLINGS, JACKSON and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Appellant Robert Barker ("Barker") and Respondents Dr. Howard Francis and his brother Dr. Larry Francis ("the Doctors") entered into an Earnest Money Agreement whereby Barker would exchange farmland and water stock for the Doctors' ranch in Nine Mile Canyon ("Nine Mile Ranch"). The Doctors refused to perform, and Barker brought this action seeking specific performance and/or damages.

The trial court found that the Earnest Money Agreement was an enforceable contract but denied Barker's request for specific performance due to impossibility of performance and awarded him nominal damages of $1.00 and attorneys fees. Barker appeals seeking partial specific performance or, in the alternative, a new trial to determine damages. The Doctors cross-appeal from the judgment in favor of Barker for nominal damages and attorneys fees. We affirm.

## FACTUAL BACKGROUND

Roger Olson ("Olson"), a real estate agent, arranged a land exchange agreement between Barker and the Doctors. Various counter-offers, all written on the same Earnest Money Agreement, were exchanged by the parties. Under the date of April 21, 1980 was written "agree to above" which was signed by the Doctors. Below that was written "I acknowledge receipt of final copy bearing all signatures." Both Barker and the Doctors signed this statement.

The April 21, 1980 version of the Earnest Money Agreement ("Earnest Money Agreement") stated that Barker would purchase the Doctors' Nine Mile Ranch, valued at $600,000, by paying $1000 earnest money along with 80 acres of his 150–acre farm and 180 shares of water stock. The Doctors would retain 40 acres of their choice of Nine Mile Ranch, along with a right of access. Barker would have grazing rights on the retained 40 acres.

The Earnest Money Agreement contained no description of the 80 acres of farmland Barker was to convey. Barker showed Olson the 80 acres referred to in the Earnest Money Agreement. However, Olson did not show the land to the Doctors until after they had signed the final agreement. The Doctors made no objection to the designated land until several weeks after their inspection.

Following the signing of the Earnest Money Agreement, both parties hired attorneys to prepare the deed and other closing documents and to obtain title insurance. Upon realizing that the necessary title work could not be completed by the May 1, 1980 closing date, Barker attempted to extend the closing date to June 10, 1980 but received no response from the Doctors. The Doctors subsequently tried to modify the Earnest Money Agreement and then refused to perform. Barker filed this action seeking specific performance.

At trial, the Doctors claimed that Olson told them that the Earnest Money Agreement was preliminary and that a final agreement would need to be drafted. Olson denied this. Dr. Larry Francis admitted that he knew the Earnest Money Agreement was a contract and that he would be liable for attorneys fees if he breached.

The trial court found that the Earnest Money Agreement was an enforceable contract but denied specific performance because the Doctors' wives were co-owners of the land and had not signed the Agreement nor authorized their husbands to do so. The court awarded Barker $1.00 in nominal damages due to his failure to present competent evidence at trial to establish damages. Barker was also awarded attorneys fees of $22,126.80 as provided for in the Earnest Money Agreement.

Barker now seeks "partial specific performance" which would require the Doctors to purchase his land for $600,000 in cash. The Doctors cross appeal from the judgment in favor of Barker for nominal damages and attorneys fees, claiming there was never a final contract between the parties.

The issue before this Court is whether the trial court was correct in finding that

the Earnest Money Agreement was an enforceable contract but then denying specific performance.

## STANDARD OF REVIEW

■ Under the Utah Rules of Civil Procedure an appellate court can set aside the factual findings of the trial court only if they are clearly erroneous. Utah R.Civ.P. 52(a). It is irrelevant whether the case is one in equity or one at law. *Ashton v. Ashton*, 733 P.2d 147, 150 n. 1 (Utah 1987). We will, therefore, not disturb the findings of fact of the trial court unless they are clearly erroneous.

## THE EARNEST MONEY AGREEMENT

### A.

■ The Doctors challenge the trial court's finding that the Earnest Money Agreement is an enforceable contract. The Doctors' first argument is that the Earnest Money Agreement is void due to fraud. During the trial, the Doctors made a motion to amend their answer to plead fraud in the inducement. The judge denied the motion due to the prejudice which would result to Barker to add this defense at this late stage of the proceedings. We find no abuse of discretion in this ruling and, therefore, since the issue of fraud was not properly raised in the court below, will not consider it on appeal. *Bangerter v. Poulton*, 663 P.2d 100, 102 (Utah 1983).

### B.

The Doctors' next argument is that they did not intend the Earnest Money Agreement to be a final contract. The Utah Supreme Court has found that extraneous evidence can be used to determine the intent of the parties regarding the existence of a contract. *Oberhansly v. Earle*, 572 P.2d 1384, 1386 (Utah 1977).

The Doctors claim that Olson told them that the Earnest Money Agreement was not the final contract. Olson refutes their claim. Furthermore, the Doctors' own testimony impeaches this position as Dr. Larry Francis admitted that he considered the Earnest Money Agreement a binding contract.

■ After the Earnest Money Agreement was signed, the Doctors told Olson to begin the title work necessary for closing. The Doctors' post-agreement correspondence indicates that they hoped the failure to close the Agreement on the date specified would void the contract. This supports the inference that they believed the Earnest Money Agreement was otherwise an enforceable contract. Based upon these facts, the trial judge's conclusion that the parties intended the Earnest Money Agreement to be an enforceable contract is not clearly erroneous. Utah R.Civ.P. 52(a); *Ashton*, 733 P.2d at 150 n. 1.

### C.

■ The Doctors further assert that the Earnest Money Agreement is too indefinite to enforce. The Doctors claim that the contract cannot be enforced because it contains no description of the 80 acres to be conveyed to them by Barker. It is not necessary, however, that the contract itself contain all the particulars of the agreement. The crucial factor is that the parties agreed on the essential elements of the contract. *See generally Reed v. Alvey*, 610 P.2d 1374 (Utah 1980). In *Reed*, the Utah Supreme Court allowed extrinsic evidence to show that the parties to a land sale contract actually knew the land involved, even though it was not adequately described in the document, and enforced the contract. The court found that "[i]n reviewing the written agreement evidencing the contract, and any ambiguity inherent in the language used, extrinsic evidence may be considered by the court to delineate the intent of the parties and the enforceability of the contract." *Id.* at 1377.

■ The trial court properly received extrinsic evidence to show that the parties had agreed upon which 80 acres owned by Barker were intended to be transferred to the Doctors.

■ Although the Doctors may not have personally known which 80 acres were to be conveyed to them until after they had

signed the agreement, Barker had identified the designated 80 acres by showing it to Olson, the Doctors' agent, and he accepted it on their behalf. The Doctors made no objection to Olson's acting on their behalf. The Utah Supreme Court has stated:

It is not always true that a broker who is negotiating a transaction must be exclusively the agent of one or the other. He may well be a "go-between" acting for both. And where he does so, with the knowledge and consent of both, each is chargeable with notice of facts the broker acquired in the process of the negotiations.

*Foster v. Blake Heights Corp.*, 530 P.2d 815, 817 (Utah 1974). The Doctors are, therefore, charged with knowledge of which 80 acres Barker was to convey under the Earnest Money Agreement.

■ The Doctors also claim that the contract is too indefinite to enforce because it does not specify which 40 acres of the Nine Mile Ranch they will retain, but rather allows them to designate the retained acreage. If a contract grants one party the exclusive right to select the land involved, the contract is sufficiently definite to enforce. *Davison v. Robbins*, 30 Utah 2d 338, 341, 517 P.2d 1026, 1028 (1973). In the instant case, the Doctors reserved the right to select the 40 acres they would retain. Because they alone had the right to decide, and no further agreement between the parties was necessary, the contract was sufficiently definite to enforce.

■ The agreement also indicates that the Doctors would have a right of access to the retained 40 acres. However, no mention is made of how this right of access is to be determined. "When the major aspects of a contract are specified with requisite certainty, this Court will not allow incidental details ... to deny specific performance." *Reed*, 610 P.2d at 1379. Since the contract allows the Doctors to decide which 40 acres they will retain and provides for a right of access, it can be inferred that the easement is to be chosen in the same manner. Based upon the above, we find that the Earnest Money Agreement is sufficiently definite to be enforced.

### D.

■ Finally, the Doctors challenge the validity of the contract claiming it is void due to Barker's failure to perform in a timely manner. Time is of the essence in land contracts only if it can be shown that the parties so intended. This can be demonstrated in two ways. First, the contract can explicitly state that time is of the essence, *See Century 21 All Western Real Estate v. Webb*, 645 P.2d 52, 55 (Utah 1982), or it can include language that requires a forfeiture of the deposit or an avoidance of the contract if the deadline is not met. *Cahoon v. Cahoon*, 641 P.2d 140, 144 (Utah 1982); *Huck v. Hayes*, 560 P.2d 1124, 1126 (Utah 1977). Second, the circumstances surrounding the transaction can imply that "the parties intended timeliness of performance to be of paramount concern." *Cahoon*, 641 P.2d at 144. A closing date alone in a contract for the sale or exchange of land does not make time of the essence. *See id.; Huck*, 560 P.2d at 1126.

In the case at bar, the contract does not state explicitly that time is of the essence. The circumstances surrounding this transaction also do not imply an intention to make time of the essence. The Doctors claim that time was of the essence since it was essential for the parties to know who would be operating the farm so that planting and other spring activities could be completed in a timely manner. This claim is without merit since the contract specifically states that Barker will retain use of the 80 acres of farmland until November 1980.

■ The Doctors also claim that their refusal to grant Barker an extension beyond the May 1 closing date by ignoring his request to extend the date is evidence that time was of the essence. However, this conduct is also consistent with Barker's theory that the Doctors decided not to proceed with the Earnest Money Agreement. The lower court's finding that time was not of the essence in the performance of the Earnest Money Agreement is not clearly

erroneous. Utah R.Civ.P. 52(a); *Ashton,* 733 P.2d at 150 n. 1.

 Since time was not of the essence in this case, Barker need only show that he was ready, willing and able to perform within a reasonable time. *See Reed,* 610 P.2d at 1379. Barker was not required to actually tender performance since the law does not require a contracting party to do a "useless act and tender performance where the other contracting party cannot or will not perform his part of the agreement." *Jenson v. Richens,* 74 Wash.2d 71, 442 P.2d 636, 639 (1968). A party to a contract may not obtain an advantage from the fact that he is unable to perform. *Huck,* 560 P.2d at 1126. Barker was prepared to close by June 10, 1980 which was within a reasonable time. The facts support the trial court's finding that the Earnest Money Agreement was an enforceable contract.

## SPECIFIC PERFORMANCE

 This Court must now determine whether the trial court, after finding that the Earnest Money Agreement was an enforceable contract, should have granted partial specific performance. Under the proper circumstances, specific performance is available to vendors of land, *Perron v. Hale,* 108 Idaho 578, 701 P.2d 198, 202 (1985); *Wagner v. Anderson,* 122 Utah 403, 250 P.2d 577, 580 (1952), in contracts involving the exchange of land. *Mundy v. Irwin,* 20 N.M. 43, 145 P. 1080, 1082 (1915); *see generally Gregerson v. Weatherly,* 160 Colo. 414, 417 P.2d 769 (1966).

It is undisputed that the parties had either agreed to or were negotiating a land exchange contract. It is also undisputed that the trial court could not grant Barker's request for specific performance as the Doctors' wives were joint owners of the Nine Mile Ranch. Because they had not signed the Earnest Money Agreement or authorized their husbands to do so in their behalf, they could not be forced to convey their portion of the property to Barker.

 Barker now asks this Court to grant "partial specific performance" ordering the Doctors to pay him $600,000 for the agreed-upon portion of his farm. The Agreement entered into by the Doctors and Barker was a land exchange contract. At no point in time did either party agree to purchase the other party's property for cash. To modify the contract and require the Doctors to buy Barker's farm for $600,000 is not within the power of the court. "While a court may *interpret* contracts which are open to interpretation, a court may *not* make a new one for the parties and may not alter or amend one which the parties themselves have made." *Herrin v. Herrin,* 595 P.2d 1152, 1155 (Mont.1979) (emphasis in original); *see also Provo City Corp. v. Nielson Scott Co.,* 603 P.2d 803, 806 (Utah 1979) (court will not rewrite unambiguous contract). As the court in *Williams v. Pearman,* 164 S.W. 43, 44 (Tex.Civ.App.1914) states:

> [W]here the agreement is for an exchange of lands, to compel a specific performance thereof as to that portion of the land to which the defendant has title, and to render a money judgment against him for the value of that portion which he is unable to convey, would require the performance of a contract which the defendant did not make.

*See also Sternberger v. McGovern,* 56 N.Y. 12, 16–17 (1874). The trial court properly refused to rewrite the parties' contract.

## DAMAGES

Barker claims we should remand the case to allow him to present evidence of the damages he suffered as a result of the Doctors' breach of contract. Substantially before the trial, Barker made a motion to bifurcate the trial so a preliminary determination could be made as to whether specific performance was available. However, this motion was withdrawn, and was not properly before the court at the time of trial.

 Although requested by the Doctors, the trial court did not require Barker to make an election between suing for specific performance and suing for damages for breach of the Earnest Money Agreement. Barker was free at trial to present evidence on both theories. That he failed

to present competent evidence on the issue of damages is his own fault and he has no basis for complaint.

Judgment affirmed. Parties to bear their own costs.

JACKSON and GREENWOOD, JJ., concur.