Jack D. COOPER, Plaintiff and Respondent,

v.

DESERET FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant and Appellant.

No. 880028–CA.

Court of Appeals of Utah.

July 6, 1988.

Joseph E. Hatch (argued), Salt Lake City, for defendant and appellant.

Heber Grant Ivins (argued), American Fork, for plaintiff and respondent.

Before BILLINGS, GREENWOOD and DAVIDSON, JJ.

## OPINION

BILLINGS, Judge:

Deseret Federal Savings and Loan Association ("Deseret") appeals from the trial court's decision which barred Deseret from enforcing the due-on-sale option of the parties' trust deed and ordered Deseret to pay Cooper's attorney fees. We affirm in part and reverse in part.

Deseret and Cooper executed a trust deed to secure a $315,000 note. The deed contains a due-on-sale option, which provides in pertinent part:

> If all or any part of the property interest or an interest therein is sold or transferred by Borrower [Cooper] without Lender's [Deseret's] prior written consent, ... *Lender may, at Lender's option,* declare all the sums secured by this Deed of Trust to be immediately due and payable.

(Emphasis added). The deed does not specify a time within which Deseret may, as a result of the borrower's unauthorized transfer of the property, exercise its option to accelerate the remaining balance on the note.

In May 1978, Cooper, without obtaining Deseret's prior written consent, sold the mortgaged real estate to Ford. Deseret was unaware of the transfer until April 1979, when Deseret received an insurance binder naming Ford as the owner of the property. Deseret sent a letter declaring acceleration of the obligation on June 22, 1981; however, neither Cooper nor Ford claim receiving the letter. Deseret sent a follow-up letter on August 18, 1981, again demanding payment of the note which Cooper and Ford admit receiving.

In December 1981, Ford and Deseret entered into negotiations whereby Ford would assume Cooper's note obligations. As part of the assumption, Cooper was to transfer any escrow funds held by Deseret to Ford. In May 1982, Cooper refused to consent to this transfer of escrow funds.

In the spring of 1982, Ford became delinquent on his payments to Deseret and to Cooper. On October 1, 1982, Ford filed Chapter 11 Bankruptcy. Consequently, the ensuing automatic stay precluded Deseret and Cooper from foreclosing on the mortgaged property.

On September 18, 1983, the bankruptcy court modified the automatic stay and allowed Cooper to foreclose on the property. Cooper successfully completed foreclosure on February 1, 1984. Nine days later, Deseret sent a letter to Cooper affirmatively exercising its option to accelerate the maturity of the note because of Cooper's failure to obtain Deseret's prior written consent before selling the property to Ford in 1978. On April 16, 1984, Cooper tendered all arrearages to Deseret to bring the note current. However, Cooper's tender was conditioned on Deseret's waiving the due-on-sale option. Deseret refused to accept the conditional tender. During the course of liti-

gation, however, Cooper unconditionally brought the note current.

Cooper and Deseret were unable to resolve their dispute over the due-on-sale option. Consequently, on June 5, 1984, Deseret recorded a notice of default. Cooper responded by filing a complaint against Deseret seeking an injunction to prevent Deseret from foreclosing on the property.

The trial court issued the injunction reasoning that Deseret was barred from exercising its option to accelerate the balance of the note because (1) it took over five years to assert its rights under the due-on-sale option, and (2) Cooper had detrimentally relied on Deseret's failure to exercise its option by continuing to make payments on the loan and by foreclosing on Ford's interest. The court concluded that since the contract provided no express time period in which Deseret was required to exercise the due-on-sale option, Deseret had to exercise its option "within a reasonable time." The court concluded that five years was not reasonable.

I.

DUE–ON–SALE OPTION

The first issue on appeal is whether Deseret is barred from exercising the due-on-sale option because over five years lapsed between when Deseret learned of Cooper's sale of the property and when Deseret filed its notice of default. On review, we will not set aside the factual findings of the trial court unless they are clearly erroneous. *Barker v. Francis,* 741 P.2d 548, 551 (Utah Ct.App.1987).

■ Deseret insists that the issue on appeal is simply whether Deseret commenced foreclosure proceedings within the six-year statute of limitations, Utah Code Ann. § 78–12–23 (1987), or, in other words, within six years of May 1978, when Cooper sold the property to Ford.

We are not persuaded that, in this context, the six-year statute of limitations is controlling. We are not dealing with enforcement of the underlying obligation but rather the enforcement of an option contract contained within the primary obligation.[1] In this context we must focus on the time frame within which Deseret could exercise its option to accelerate the balance on the original note under the contractual due-on-sale option.

■ When a contract fails to specify the time by which a certain act must be performed, the law implies the act be performed within a reasonable time. *Watson v. Hatch,* 728 P.2d 989, 990 (Utah 1986). In *Bradford v. Alvey & Sons,* 621 P.2d 1240, 1242 (Utah 1980), the Utah Supreme Court stated: "[W]hen a provision in a contract requires an act to be performed without specifying the time, the law implies that it is to be done within a reasonable time under the circumstances."

This rule has been applied in the context of acceleration clauses in mortgage instruments, including due-on-sale options:

> The prevailing rule is that under an ordinary acceleration clause in a mortgage or trust deed, the obligee has a reasonable time after the default or the event which gives rise to the right to accelerate in which to elect to declare the indebtedness due. Accordingly, where ... no definite time is specified by which the election to accelerate must be exercised, such election to do so must be made within a reasonable time.... Of course, each case must be considered on its own facts, and, certainly, an election to accelerate a year or years in the future, ... could not be considered reasonable under ordinary circumstances.

*Malouff v. Midland Fed. Sav. & Loan Ass'n,* 181 Colo. 294, 509 P.2d 1240, 1245–46 (1973). *Accord Dunham v. Ware Sav. Bank,* 384 Mass. 63, 423 N.E.2d 998, 1000

---

1. On appeal, Deseret cites *F.M.A. Fin. Corp. v. Build, Inc.,* 17 Utah 2d 80, 404 P.2d 670, 673 (1965), for the proposition that "laches cannot be a defense before the statutory limitation has expired." However, *F.M.A.* is not on point because the context or issue of *F.M.A.* was the applicability of the statute of limitations to a promissory note and a mortgage, *not,* as we have before us, the applicability of the statute of limitations to an option contained *within* the note.

(1981); *First Fed. Sav. & Loan Ass'n v. Perry's Landing, Inc.*, 11 Ohio App.3d 135, 463 N.E.2d 636, 648 (1983).

■ The trust deed at issue fails to specify a time within which Deseret could exercise its option to accelerate the balance of the note. Accordingly, the trial court concluded

> That the failure of the defendant [Deseret] to exercise the due-on-sale clause of the trust deed by recording the notice of default and initiating either a judicial or non-judicial trust deed foreclosure for approximately four years after notice of a sale in violation of the due-on-sale provision is not exercising the option within a reasonable time, which the law requires, and when no other time provision for the exercise of said right is specified in the trust deed.

There are ample facts in the record to support the trial court's conclusion that Deseret's failure to enforce the due-on-sale option for more than four years after it learned of the sale is unreasonable. *See Malouff*, 509 P.2d at 1246 (one month is reasonable, but not one year). Accordingly, we affirm the trial court's conclusion.

■ Deseret acted at its peril in delaying to exercise its option to accelerate the remaining balance on the note. Furthermore, we agree with the trial court's conclusion that Cooper detrimentally relied on Deseret's apparent decision not to exercise its option because Cooper brought the underlying note current and continued to make payments thereon, and foreclosed out Ford's interest in the property—all in an effort to keep the property.

**2.** Our result would be different if Utah Code Ann. § 78–27–56.5 (1987) applied to this case. Section 78–27–56.5, enacted by the Legislature in 1986, provides:

> A court may award costs and attorney's fees to either party that prevails in a civil action

## II.

### ATTORNEY FEES

The second issue on appeal is whether the trial court erred in ordering Deseret to pay Cooper's attorney fees incurred in preventing Deseret from foreclosing on the property.

The general rule in Utah is that attorney fees cannot be recovered absent statutory authorization or contract. *See Jorgensen v. John Clay & Co.*, 660 P.2d 229, 233 (Utah 1983). There is no statutory basis upon which Cooper could recover attorney fees. Therefore, Cooper can recover them, if at all, only under the parties' contract.

■ The attorney fees provision in the trust deed reads as follows:

> Lender [Deseret] shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorney's fees.

There is no provision in the trust deed entitling *Cooper*, the borrower, to attorney fees.[2] Consequently, the trial court's award of attorney fees to Cooper was error and we reverse that award.

Affirmed in part and reversed in part. Each party to bear its own costs on appeal.

GREENWOOD, and DAVIDSON, JJ., concur.

based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney's fees.