Raymond SPARROW, Plaintiff
and Appellee,

v.

TAYCO CONSTRUCTION COMPANY,
Defendant and Appellant.

No. 910370–CA.

Court of Appeals of Utah.

Feb. 4, 1993.

Rehearing Denied Feb. 23, 1993.

Robert M. McRae (argued), McRae & De-Land, Vernal, for defendant and appellant.

George W. Preston (argued), Logan, for plaintiff and appellee.

Before GARFF, ORME and RUSSON, JJ.

## OPINION

GARFF, Judge:

Tayco Construction Company (Tayco) appeals a judgment in favor of appellee Raymond Sparrow involving a contract dispute. We affirm.

Because Tayco challenges the court's findings, we draw the facts from the trial court's findings and reasonable inferences drawn therefrom. *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985). On May 4, 1987, Tayco, a licensed construction company, contracted with Logan City to build three water storage tanks in consideration of $500,000. Logan City notified Tayco to proceed on May 4, 1987. Prior to this time, Tayco, via its president Guy Taylor, subcontracted with Sparrow to provide equipment and expertise for the project. Sparrow, who resides in Idaho, has a contractor's license in Idaho, but not Utah.

On April 30, 1987, Tayco provided the following documents, some of which the parties executed, and all of which the court concluded comprised the parties' contract: (1) An Equipment Purchase Agreement (Purchase Agreement); (2) a standard American Institute of Architects form subcontract (AIA document); (3) a bill of sale; (4) a Proposal; and (5) a note from Taylor.

The Purchase Agreement, signed by both Sparrow and Taylor, refers to two other documents: (a) Exhibit A, attached to the Purchase Agreement, a price break down of the equipment totaling $97,252.45; and (b) the subcontract, the AIA document. The Purchase Agreement refers to the subcontract as follows: "NOTE: Purchase price as indicated in sub contract [sic] dated 4–30–87" and "Payments as indicated in sub contract [sic] agreement." The Purchase Agreement notes that the cash price of the equipment is $26,000, and that the "total deferred payment price" is payable "as in sub contract [sic] agreement." The Purchase Agreement also has an integration clause stating: "THIS AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN US AND NO OTHER REPRESENTATION OR INDUCEMENT, VERBAL OR WRITTEN, HAS BEEN MADE WHICH IS NOT SET FORTH HEREIN."

The AIA document, signed by Sparrow as a subcontractor and by Taylor on behalf of Tayco, contains a typed-in addition in which Sparrow agreed to

> furnish consultation and individual labor durning [sic] the construction phazes [sic] of all tanks: labor of Raymond Sparrow to [be] included in the purchase price of the lease purchase equipment more particularly described as one 1972 International form truck with boom serial no. 25947102032764 together with all forms and attachments and misc. equipment as contained in exhibit A.

The AIA document has typed-in language stating the contract sum as "$85,000 Included the purchase of all equipment as mentioned [in] 2.1, article 2, broken down as follows; Truck, Crane forms & related equipment $26,000.00; Consulting services and labor for Raymond Sparrow $59,-000.00."

The AIA document specifies that the work would commence "at the time of con-

tractors [sic] notice to proceed: time being reasonable not to exceed 90 day[s]."

The AIA document includes a preprinted integration clause, which provides for the parties to enumerate the contract documents. In the space provided, the parties did not list any extraneous documents.

The bill of sale, signed by Sparrow and notarized by Taylor, acknowledged Tayco would pay $26,000 in consideration for the "International Crane, Forms, Misc. items."

The Proposal, executed on the same date, was signed by Sparrow and not by Tayco. The Proposal was a preprinted form, which contained the following in Taylor's handwriting:

Tayco Construction Co. agrees to purchase one inter. 470 serial # 25947102032764 and concrete forms and including all attachments and misc[.] form materials for the sum of $85,000.00 together with forms and materials as represented this date. Seller is to subcontract all forming and bracing on the 1987 reservoir project located at Logan[,] Utah. 2 (1) million gallon reservoirs (1) 500,000 gal[.] reservoir as part of this purchase price. Payments to be made as work on reservoirs progresses. Tills to track, w/crane and formings to remain with seller until paid in full.

Finally, Taylor wrote the following in a note to Sparrow: "Ray bring title to truck and we will pay you as agreed. Also bring forms each day until we are square on the forms & misc."

Apparently, no money changed hands at the time the parties executed the documents, although Tayco later paid Sparrow $5,000.

On or about June 8, 1987, Sparrow first commenced performance on the contract.

On July 10, 1987, after construction had begun, Sparrow injured his back and chest in a farming accident. He notified Taylor of his injuries. The two met at Sparrow's home in Weston, Idaho, on July 13, 1987. Taylor told Sparrow he no longer wanted him on the job and that he would pay him $21,000, which amount Taylor considered to be the balance owed on the equipment. Taylor offered Sparrow $21,000 in the form of a signed blank check, which Sparrow never negotiated. Sparrow refused the offer because the $21,000, combined with what he had already received, did not amount to the agreed price of $85,000.

On July 13, 1987, Taylor signed and posted on the job site a notice printed on Tayco Construction Company letterhead, which stated: "Raymond Sparrow no longer works on the Logan Reservoir Projects."

On July 17, 1987, Sparrow was fitted with a back brace. Before Sparrow returned to work, he had recovered sufficiently to work as a farmer. This work included moving sprinklers, feeding calves, driving a tractor, roofing the house, and doing odd jobs. On July 27, 1987, he returned to the work site for a full day's work. He later testified, and the court found, that as of that date, he was capable of operating a crane and supervising at the work site.

The next day, July 28, 1987, Taylor confronted Sparrow and told him he could not enter the construction site. Thereafter, Tayco completed the project for Logan City without Sparrow's assistance. Tayco kept the truck, crane and forms, having paid only $5,000 to Sparrow.

Sparrow sued for breach of contract. Tayco counterclaimed, also for breach of contract.

The court construed all five documents together "as an integrated contract notwithstanding the fact that there are numerous internal inconsistencies within the AIA contract." It concluded that "the true intentions of the parties were not adequately reflected in the language of the agreements in the inconsistent provisions. By reason thereof the Court finds that the documents are considerably less than entirely clear and are ambiguous documents." The court then admitted parol evidence to determine the parties' intentions.

Based in part on the parol evidence, the court concluded that "this was a contract by [Tayco] for the purchase of [Sparrow's] equipment in the amount of $85,000, and that the provision of the contract providing for supervision by [Sparrow] was as an accommodation to [Tayco] which [would] benefit [Sparrow] by insuring a more prompt payment of the purchase price." The court also found that where the parties had documented the equipment price as $26,000, they did so at Tayco's urging so that Tayco could receive a tax benefit.

The court concluded that "on July 13, 1987, [Sparrow] was not in breach of the agreement between the parties." It also found and concluded that

> on July 13, 1987, Guy Taylor acting in behalf of Tayco Construction Company terminated the agreement between [Sparrow] and [Tayco], which termination was unwarranted and wrongful in view of the evidence introduced by [Sparrow] that notwithstanding such accident, [Sparrow] still had sufficient time to complete the contract between the parties.

The court found that Sparrow had "delivered to [Tayco] virtually all of the equipment with the exception of equipment having a value of $10,824.79." It further found that Tayco had paid Sparrow "the sum of $5,000.00 and by reason thereof there is a balance due and owing in the amount of $69,175.21." The court then awarded Sparrow judgment against Tayco for this amount, together with interest at the rate of ten percent per annum from September 12, 1987, for $22,481.87, totaling $91,657.08, with twelve percent per annum interest from the date of judgment. It also awarded Sparrow attorney fees of $11,-814.83, together with costs of court of $1,700, the attorney fees to bear interest at twelve percent per annum.

Based on its conclusion that Sparrow had not breached the contract, the court dismissed Tayco's counterclaim and cross-claim with prejudice.

Tayco appeals, claiming the court erred in (1) concluding the documents were ambiguous; (2) admitting parol evidence; (3) finding Sparrow was physically capable of performing the contract; (4) concluding that Sparrow could recover even though he was not licensed in Utah; and (6) dismissing Tayco's counterclaim.

## MULTIPLE DOCUMENTS

■ We first consider whether the court correctly concluded that all five documents executed April 30, 1987, comprise the parties' agreement.

Where documents are executed "substantially contemporaneously and are clearly interrelated, they must be construed as a whole and harmonized, if possible." *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987); *see also Bess v. Jensen*, 782 P.2d 542, 544 (Utah App.1989) (to determine whether parties executed one or two contracts, look to whether separate consideration supports each agreement).

■ In determining which of these documents constitute offers rather than contracts, we consider whether there was "mutual assent to all the essential terms." *Engineering Assocs., Inc. v. Irving Place Assocs., Inc.*, 622 P.2d 784, 787 (Utah 1980); *see also Barker v. Francis*, 741 P.2d 548, 551 (Utah App.1987) (while parties must agree on essential elements of contract, document need not contain all particulars of agreement).

Here, the bill of sale memorialized that Sparrow had received $26,000 for the equipment. The bill was accompanied by no new consideration. Further, it was signed by Sparrow, with Taylor signing as a notary and not as an agent of Tayco. In other words, it failed to meet the requirements of a contract because it did not reflect mutuality, *see Engineering Assocs.*, 622 P.2d at 787, nor did it reflect that "the parties agreed on the essential elements of the contract." *Barker*, 741 P.2d at 551.

Likewise, the Proposal did not reflect Tayco's assent. Thus, the Proposal constituted an offer, not a contract. *See Resource Management Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985).

Finally, Taylor's note to Sparrow was just that: a directive from Taylor to Sparrow which did not reflect Sparrow's assent.

Thus, in considering the terms of the contract, we look only at the Purchase Agreement and the AIA document.[1]

## AMBIGUITY

■ Tayco claims the court erred in concluding the contract was ambiguous regarding whether the parties contracted for equipment or for personal services. Likewise, Tayco claims the court erred in admitting parol evidence to discover the intent of the parties.

■ A contract is ambiguous only " 'if the words used to express the meaning and intention of the parties are insufficient in a sense that the contract may be understood to reach two or more possible meanings.' " *Central Sec. Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 681 P.2d 15, 17 (1984) (quoting *Western Casualty & Sur. Co. v. Budig*, 213 Kan. 517, 516 P.2d 939, 941 (1973)). However, a parties' assertion of a different meaning does not in itself render a contract ambiguous. *Crowther v. Carter*, 767 P.2d 129, 132 (Utah App.1989).

■ Upon concluding that a contract is ambiguous, a court can admit extrinsic evidence, including parol evidence, to determine the parties' intent. *Plateau Mining Co. v. Utah Div. of State Lands and Forestry*, 802 P.2d 720, 725 (Utah 1990).

■ Whether a contract is ambiguous is a question of law, which we review for correctness. *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989).

We therefore consider whether the contract, in this case the AIA document and the Purchase Agreement, is ambiguous as to whether the parties contracted for equipment or for personal services.

Here, the Purchase Agreement contains several internal inconsistencies regarding the price of the equipment and regarding the nature of the contract. Specifically, the Purchase Agreement notes that the cash price of the equipment is $26,000, while Exhibit A of the same document includes an itemization of the equipment totaling $97,252.45. It is unclear whether this amount was anything other than an offering price. The Purchase Agreement also states that the purchase price is that indicated in the AIA document.

The Purchase Agreement is externally inconsistent with the AIA document, which states that Sparrow's labor is to be "included in the purchase price of the lease purchase equipment." The document states that the contract sum is $85,000, with the equipment totaling $26,000, and consulting services totaling $59,000.

■ Here, the words of the two documents create two or more plausible meanings. That is, the contract supports an interpretation that the purchase price of the equipment could be $26,000 or $97,-252.45 or $85,000. Also, the contract supports an interpretation that Sparrow's labor could be included in the purchase price of the equipment, or it could be separately billed at $59,000. Because the contract creates two or more plausible meanings, it is ambiguous as a matter of law. *See Central Sec.*, 681 P.2d at 17. Thus, the court did not err in concluding that the contract was ambiguous, nor did it err in admitting extrinsic evidence in an effort to properly construe it. *See Plateau Mining*, 802 P.2d at 725.

---

**1.** Of course, to the extent that the contract terms are ambiguous, the other documents may be considered, along with other extrinsic evidence, in determining the intent of the parties.

## INTENT OF PARTIES

■ Because we have determined, as a matter of law, that the court did not err in determining that the contract is ambiguous and that it did not err in admitting parol evidence, we next consider whether the court clearly erred in finding that the contract was for the purchase of equipment, with the purchase price being $85,000.

■ Because this is an issue of fact, our review is strictly limited. *Plateau Mining Co. v. Utah Div. of State Lands and Forestry,* 802 P.2d 720, 725 (Utah 1990); *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985). We are " 'obliged to review the evidence and all inferences that may be drawn therefrom in a light most supportive of the findings of the trier of fact.' " *Id.* (quoting *Car Doctor, Inc. v. Belmont,* 635 P.2d 82, 83 (Utah 1981)). We will not disturb the trial court's findings unless they are clearly erroneous. *Car Doctor,* 635 P.2d at 84; *Allstate Enters., Inc. v. Heriford,* 772 P.2d 466, 468 (Utah App.1989).

■ Moreover, in challenging the court's findings regarding the parties' intent, Tayco must marshal the evidence supporting these findings and then show how the evidence and the reasonable inferences drawn therefrom are legally insufficient to support the findings. *Zions First Nat'l Bank v. Overthrust Oil & Gas Corp.,* 826 P.2d 139, 140 (Utah 1992). Tayco has not done this. Instead, Tayco has reargued the evidence supporting its case.

Here, the court relied on substantial evidence to support its findings that the parties intended that the purchase price of the equipment would be $85,000. Because Tayco has not marshaled the evidence and because the court relied on substantial evi-

dence, we affirm the court's finding that Tayco contracted to pay Sparrow $85,000 for equipment, with Sparrow's services being incidental thereto.

Given our affirmance of this finding, we likewise affirm the court's findings that (1) Sparrow had delivered "virtually all of the equipment with the exception of equipment having a value of $10,824.79;" (2) Tayco had paid Sparrow "the sum of $5,000.00 and by reason thereof there is a balance due and owing in the amount of $69,175.21;" (3) Sparrow is entitled to interest on this amount as awarded; (4) Sparrow is entitled to a reasonable attorney fee plus costs. We likewise affirm the court's conclusion that Tayco breached the contract in denying payment to Sparrow and in barring Sparrow from the work site.[2]

Because we affirm that the contract was primarily for the sale of equipment and not for personal services, it becomes immaterial whether Sparrow was capable of providing personal services, or whether he was licensed in Utah.

## DISMISSAL OF TAYCO'S COUNTERCLAIM

Tayco claims the court erred in dismissing its counterclaim for damages due to Sparrow's breach of contract.

Tayco's counterclaim is without basis given the court's finding, and our affirmance of that finding, that as of July 13, 1987, Sparrow had delivered to Tayco "virtually all of the equipment with the exception of equipment having a value of $10,824.79," and given our affirmance of the court's conclusion that Tayco breached the contract.

Because Tayco has not prevailed on its counterclaim that Sparrow breached the contract, its claim for damages is without merit. *See Mann v. American W. Life*

---

**2.** Even if Sparrow's personal services were a distinct component of the contract and not incidental to the equipment sale, he would still be entitled to recover the amount attributable to his intended services, given this determination, and the finding that Sparrow's condition did not preclude him from performing in a timely fashion.

*Ins. Co.*, 586 P.2d 461, 464 (Utah 1978) (courts will not devise basis for relief merely because "one party to a contract can show injury flowing from the exercise of a contract right by the other"). We therefore affirm the court's dismissal of Tayco's counterclaim.

We accordingly affirm the order and remand for determination of reasonable attorney fees on appeal and interest accrued.

ORME and RUSSON, JJ., concur.